**UNITED STATES of America, Plaintiff,**

**v.**

**Peter P. CORGIAT et al., Defendants.**

**No. 75 CR 315.**

United States District Court,
N. D. Illinois, E. D.

Aug. 3, 1976.

T. T. Scudder, Asst. Atty. Gen., Chicago, Ill., for plaintiff.

Jerome Rotenberg, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

KIRKLAND, District Judge.

This cause is before the Court for resolution of legal issues related to severance of trials of defendants Corgiat and Clydesdale.

The indictment charges that defendants, while simultaneously holding offices in the First National Bank of Oglesby (the "Bank") and Pure Silica Company, conspired to mis-apply bank funds and make false entries in bank records in violation of 18 U.S.C. §§ 371, 656, and 1005. Jurisdiction is invoked pursuant to 18 U.S.C. § 3231.

On July 9, 1975 defendant Clydesdale moved for entry of an order severing his trial from that of co-defendants. The Government does not oppose Clydesdale's motion for severance from defendants Costa and Halm but does object to a severance from defendant Corgiat. This Court set a date for a hearing to determine whether the Corgiat severance should be granted, but the hearing was subsequently cancelled so that related legal issues could be resolved.

## I. SEVERANCE PURSUANT TO BRUTON v. UNITED STATES

The Government has stated it intends to offer as evidence at trial an Agreement signed by all defendants except Clydesdale. Defendant Clydesdale alleges that the Agreement "appears to concede the charges in the indictment" by admitting that defendants made extensions of credit which were unsafe and unsound and that the directors and officers were involved in illegal self-dealings.

Clydesdale argues that although the Agreement Corgiat signed would not be admissible as to Clydesdale personally, its admission into evidence against Corgiat in a joint trial could inculpate Clydesdale as well. Clydesdale reasons that if the Agreement were admitted as to Corgiat and Corgiat elected not to testify, Clydesdale would be faced with the inculpatory admission without an opportunity to cross-examine Corgiat. Clydesdale therefore alleges his Sixth Amendment right to cross-examine adverse witnesses would be violated by admission of the Agreement at a joint trial.

In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that in a joint trial, admission of a co-defendant's statement which inculpates another defendant violates the latter's Sixth Amendment right to cross-examine adverse witnesses if the co-defendant does not testify at trial. The Court there reasoned that the introduction into evidence of "highly inculpatory" statements of a defendant presents a substantial risk to his co-defendant which cannot be cured by cautionary instructions. The Court stated that:

[T]here are some contexts in which the risk that the jury will not, or cannot, follow the instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. (391 U.S. at 135, 88 S.Ct. at 1627)

In situations such as these, courts have held that if the Government uses co-defendant's statement, severance may be granted pursuant to Rule 14, Federal Rules of Criminal Procedure, United States v. Holt, 483 F.2d 76 (5th Cir. 1973); Gray v. United States, 407 F.2d 830 (5th Cir. 1959).

The Government opposes severance on the grounds that the Agreement is neither "clearly inculpatory" of Clydesdale nor vital to the Government's case against Clydesdale.

The Government first argues that since the signing of the Agreement occurred more than twenty-one months after Clydesdale served on the Bank's Board of Directors, the Agreement signed by Clydesdale's co-defendants does not inculpate him. The Government reasons that because Clydesdale was not a party to the Agreement, he cannot be bound by its representations. The Government further argues that the Agreement's reference to past practices of the Bank does not clearly inculpate Clydesdale because the reference is indefinite and does not specifically identify the

transactions which are the subject of the present indictment.

This Court cannot agree with the Government that the Agreement is not inculpatory of defendant Clydesdale. Although Clydesdale did not sign the Agreement which acknowledges that past bank practices were unsound and illegal, the Agreement relates back to a time when Clydesdale was allegedly involved in making the loans. The possibility that the jury would not be able to follow limiting instructions in such circumstances is too great.

This Court finds equally unmeritorious the Government's argument that references to past transactions are too indefinite to be inculpatory. The introduction to the Agreement specifically refers to elimination of banking practices

> which the Comptroller has concluded to be unsafe and unsound, including matters of director and officer self-[dealing] and [violation] of law, rules and regulations
> . . . .

Section I of the Agreement immediately follows the introductory material and deals directly with loans to Pure Silica Company:

> The extensions of credit to Pure Silica Co., and Amoco Asphalt Company, Inc. . . . are in excess of the lending limit . . . and are unsafe and unsound . . . .

This Court is of the opinion that such statements in the Agreement are definite enough to create serious questions as to the involvement of the officers in the allegedly illegal transactions enumerated in the indictment. This Court finds that the Government's argument of indefiniteness is without merit.

The Government finally argues that the Agreement is not vital to the case against Clydesdale, and that "the Government will rely *primarily* on other evidence as to him" (emphasis added). However, the question in the present case is not whether the Government will rely *primarily* upon the Agreement but rather whether the jury should be allowed to consider this evidence *at all* against Clydesdale. This Court views the prejudicial effect of this Agreement to be so pervasive that cautionary instructions would be to no avail.

Accordingly, defendant Clydesdale's motion for severance from codefendant Corgiat is granted.

Resolution of the severance issue under *Bruton* makes unnecessary a discussion of other legal issues related to severance.