UNITED STATES of America, Appellee,

v.

Richard Lester CLEVELAND, Jr., Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Robert William LEWEY, Defendant, Appellant.

Nos. 78–1110, 78–1111.

United States Court of Appeals, First Circuit.

Argued Oct. 5, 1978.

Decided Dec. 28, 1978.

---

James B. Krasnoo, Boston, Mass., with whom Norris, Kozodoy & Krasnoo, Boston, Mass., was on brief, for defendant, appellant, Richard Lester Cleveland, Jr.

William J. Cintolo, Boston, Mass., appearing for defendant, appellant, Robert William Lewey.

Robert B. Collings, First Asst. U. S. Atty., Chief, Crim. Div., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on consolidated brief, for appellee.

Before ALDRICH, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Richard Cleveland and Robert Lewey seek reversal of their convictions under 18 U.S.C. § 2113(d) for participating in the armed robbery of the Hancock Bank and Trust Company in Braintree, Massachusetts, on January 20, 1977. They were tried before a jury with a third codefendant, Robert Scadding. On appeal, they argue that the district court abused its discretion when it denied their request that their trial be severed from Scadding's. They also argue that the court erred prejudicially when it commented on the evidence. Cleveland makes a third argument, that the court improperly and unfairly limited his cross-examination of certain eyewitnesses and of F.B.I. agents who had dealt with them. We find no error by the district court and affirm the verdict below.

Cleveland and Lewey originally sought to have their trial severed because of the anticipated testimony of one McDonough, an F.B.I. informer. Pre-trial proceedings revealed that McDonough would testify to two separate encounters with one or more of the three defendants, the first with all three, and the second with Scadding only. The first encounter allegedly occurred when McDonough returned to his apartment in Quincy between 1 and 2 p. m. on the day of the robbery (which had occurred just before 1 p. m.) and found Cleveland, Lewey and Scadding there, armed and with a substantial sum of money. Scadding had put some of the money in the closet; Lewey and Cleveland had some in their pockets and showed it to him. The three said that they had committed an armed robbery and gave McDonough about $100. They left behind some brown paper wrappings which McDonough found. Testimony to this effect was admitted at trial.

McDonough allegedly had a second encounter with just Scadding on the day after the robbery, in which Scadding told McDonough what all three defendants had done during the robbery. In his account he described what the defendants had worn, the weapons they had carried, and how they had conducted the robbery. He said that the codefendants had robbed the Hancock Bank and Trust Company.

As Cleveland and Lewey were not present at this second encounter, McDonough's report of Scadding's remarks implicating them could not be received at a joint trial involving them, although Scadding's remarks were admissible against Scadding himself.[1] *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The potential problem was fully recognized

---

1. No contention is made on appeal that Scadding's remarks were admissible against Cleveland and Lewey on any theory of joint venture or conspiracy. The latter was not charged and the former appears by then to have terminated.

at the severance hearing, but the court denied Cleveland's and Lewey's severance motions, believing that a lesser remedy would suffice. The court ruled that McDonough's testimony about the second conversation with Scadding should be limited to what Scadding had said about his own participation in the crime and should omit any reference to Cleveland and Lewey.

When the prosecution began to question McDonough about his second meeting with Scadding, the court instructed the jury that,

"this is a conversation between just this witness and Mr. Scadding according to this witness' testimony. So it is evidence only against Mr. Scadding; it is not to be considered in the case against the other two defendants."

McDonough then related that Scadding had said that he had "participated" in a robbery of the Hancock Bank, that he had worn a ski mask and gloves, carried a toy revolver, vaulted the counter, taken money from the teller, left in a stolen car, abandoned the car in the Braintree High School parking lot, and then had driven another car to McDonough's apartment. The account of what Scadding had worn and done in the bank was consistent with the eyewitnesses' description of what the masked robbers had done.

During McDonough's testimony about the second meeting with Scadding, the prosecutor's questions and McDonough's answers were framed in terms of what Scadding alone had done, as if Scadding had said, "I robbed the bank . . . ." At no time was a plural pronoun used in recounting what Scadding had said; only because McDonough testified that Scadding had said that he had "participated" in the rob-

bery could it possibly be inferred that Scadding had not acted alone. This part of McDonough's direct testimony is set out in two pages of the transcript.[2]

On cross-examination, Cleveland and Lewey probed McDonough at length about the alleged encounter in McDonough's apartment. They established that McDonough had not gone to the F.B.I. until April 18, 1977, and they elicited several inconsistencies between his testimony and the information he had originally given the F.B.I.,[3] including the fact that he had first named one Hickey, rather than Lewey, as one of the three men in his apartment. Scadding devoted part of his cross-examination to impeaching McDonough's testimony about his second meeting with Scadding; again no reference to associates was made. At the close of cross-examination, the court reminded the jury that the testimony about the second meeting was admitted only against Scadding.

■ In arguing that the district court abused its discretion when it refused their request for severance, Cleveland and Lewey acknowledged that a "rational basis for joinder . . . appeared on the face of the indictment," *United States v. Luna*, 585 F.2d 1, 4 (1st Cir. 1978); *see* Fed.R.Crim.P. 8, and that severance motions under Fed.R. Crim.P. 14 are addressed to the discretion of the trial judge and are reviewable only for abuse, *Luna*, 585 F.2d at 4–5. They argue, nonetheless, that only severance could cure the *Bruton* problem, and that the effect of admitting McDonough's testimony as redacted was to impair their right of cross-examination.

■ The Court in *Bruton* did not indicate, however, that severance was the only remedy. It left open the possibility of us-

---

**2.** The entire transcript is 211 pages. McDonough's testimony comprises 140 pages, of which 14½ are direct examination (including bench conferences).

**3.** McDonough originally told the F.B.I. that one Hickey, rather than Lewey, was at his apartment with Cleveland and Scadding, and that the three men gave him $28 rather than $100. The F.B.I. report apparently indicated that he had also said that Hickey, one Lynch, and a

third person had appeared at his apartment on February 4 after committing an armed robbery, and that Hickey had said that they had "just hit the same place *that they had hit* several weeks previously." In a grand jury appearance McDonough stated that Hickey and Lynch had said that "they had robbed the same bank *that had been robbed* a few weeks before that." (Emphasis supplied in both quotations).

ing other methods to avoid presenting to the jury the confession of one non-testifying defendant inculpating his codefendants. In a footnote the Court mentioned, without itself disapproving, the alternative of deleting references to codefendants where practicable. 391 U.S. at 134 n. 10. That practice has been approved by the American Bar Association, ABA Project on Standards for Criminal Justice, Joinder & Severance § 2.3 (Approved Draft 1968), endorsed on one occasion by a member of the Supreme Court, *Nelson v. O'Neil*, 402 U.S. 622, 636, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971) (Marshall, J., dissenting), and followed by other courts, *e. g., United States v. Grant*, 549 F.2d 942, 948 (4th Cir.), *cert. denied*, 432 U.S. 908, 97 S.Ct. 2955, 53 L.Ed.2d 1081 (1977); *United States v. Kershner*, 432 F.2d 1066, 1071 (5th Cir. 1970); *United States v. Dugger*, 422 F.Supp. 1342, 1343–44 (E.D. Tenn.1976); *see United States v. Lord*, 565 F.2d 831, 839 (2d Cir. 1977). While the practice should be used with considerable caution, especially when the sanitized confession is relayed through a live witness, we do not believe it to be *per se* impermissible. *Cf. United States v. Castro*, 413 F.2d 891, 894–95 (1st Cir. 1969) (*Bruton* inapposite when prosecutor referred to codefendant's guilty plea implicating only himself, in trial before judge).

■■■ When the device of tailoring evidence is employed effectively in lieu of severance to avoid a *Bruton* problem,[4] the standard of review on appeal is whether appellants have made the "strong showing of prejudice" required to overturn a trial court's decision to proceed with a joint trial. *See Luna*, 585 F.2d at 4–5; *United States v. Smolar*, 557 F.2d 13, 21 (1st Cir.), *cert. denied*, 434 U.S. 866, 966, 971, 98 S.Ct. 203, 508, 523, 54 L.Ed.2d 143, 453, 461 (1977); *United States v. Cepulonis*, 530 F.2d 238, 246–47 (1st Cir.), *cert. denied*, 426 U.S. 908, 922, 96 S.Ct. 2231, 48 L.Ed.2d 834 (1976); *Sagansky v. United States*, 358 F.2d 195,

199–200 (1st Cir.), *cert. denied*, 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed.2d 55 (1966). No such showing has been made in this case.

■■■ Cleveland and Lewey do not deny that all references to them were deleted in McDonough's report of Scadding's confession. They argue, however, that the other evidence against them was so "inferential and circumstantial" that, "but for Scadding's 'confession to McDonough,'" conviction was an unlikely possibility, and that, "a jury hearing of Scadding's detailed participation in the bank robbery at trial, could not help but infer from that testimony that the people with him at McDonough's apartment shortly after the robbery, were fellow-robbers, in light of the testimony of several witnesses that two men entered the Bank to commit the robbery." Much the same kind of contention was made and rejected in *United States v. Lord, supra*, 565 F.2d 831 (2d Cir. 1977). In that case, as here, there was no direct or indirect reference to the other defendants in a codefendant's confession. The fact of the confession nevertheless tended to corroborate and, in other respects, strengthen the government's case. The court acknowledged the argument that the appellants might have had a better chance of acquittal in a separate trial at which a codefendant's confession would not have been admitted, but declined to interfere with the decision not to sever, saying,

> "Persons accused in one indictment of joint participation in a crime are normally tried together, absent a showing of substantial prejudice, as to which the defendants bear a heavy burden. Appellants' argument, which would preclude virtually any joint trial in which a defendant's self-inculpatory statements are admitted, does not satisfy that burden or require us to disturb the trial judge's ruling in this case."

---

4. A *Bruton* problem is, of course, not necessarily avoided merely by deleting names. *See, e. g., Parker v. Randolph*, 575 F.2d 1178, 1180 (6th Cir. 1978), *cert. granted*, —— U.S. ——, 99 S.Ct. 563, 58 L.Ed.2d —— (1978) (*Bruton* violat-

ed when confession, although redacted, left no doubt as to persons referred to). Here the government was careful to eliminate any references to accomplices who might, by inference, be identified as Cleveland and Lewey.

565 F.2d at 839. We agree with the Second Circuit that the "rub-off" from a codefendant's personal confession will not necessarily require a separate trial, *accord, United States v. Guillette,* 547 F.2d 743, 755 (2d Cir. 1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977); *United States v. Lobo,* 516 F.2d 883, 884–85 (2d Cir.), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); *United States v. Sparano,* 422 F.2d 1095, 1099 (2d Cir. 1970); *United States v. Akers,* 542 F.2d 770, 772 (9th Cir. 1976), *cert. denied,* 430 U.S. 908, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977); *cf. Woodcock v. Amaral,* 511 F.2d 985, 994–95 (1st Cir. 1974), *cert. denied,* 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975) (risk of spill-over effect when minor figure in conspiracy tried with coconspirators held insufficient to necessitate severance); *Gorin v. United States,* 313 F.2d 641, 646 (1st Cir. 1963), *cert. denied,* 379 U.S. 971, 85 S.Ct. 669, 13 L.Ed.2d 563 (1965) (pre-*Bruton*; insufficient prejudice to require severance of defendants). Defendants must show a very significant degree of prejudice to overcome society's interest in conducting joint trials in cases like this. *Cf. United States v. Corgiat,* 431 F.Supp. 45 (E.D.Ill.1976) (severance granted by district court where cautionary instructions could not cure prejudicial effect of inculpatory agreement signed by codefendants).

■ The admission here of Scadding's tailored confession, accompanied by proper limiting instructions, was insufficiently harmful to Cleveland and Lewey to have made severance obligatory. According to McDonough, the encounter in his apartment occurred on the very day that the Hancock Bank was robbed, and all three men, identified as the defendants, were armed and said that they had committed an armed robbery. Against this damaging evidence, Cleveland and Lewey sought to show on cross-examination that the two men who had accompanied Scadding to the apartment were actually others—Hickey and Lynch, or perhaps Hickey and Cleveland. This challenge to the accuracy of McDonough's identification was not undercut by Scadding's confession, which revealed nothing about the number or identity of any accomplices. It is true that McDonough's report of the second encounter brought out the fact that the armed robbery had been of the Hancock Bank, but there was significant other evidence tying Cleveland and Lewey to that robbery, rather than to any other. The robbery had occurred minutes before the alleged encounter with all three defendants in McDonough's Quincy apartment, and Quincy is a city next to Braintree, where the Bank is located. The trio's unauthorized entry into the apartment suggested flight and indeed they allegedly explained that they had "just scored and . . . they had to hide there." Eyewitnesses to the robbery said that the robbers were white men in their twenties—a description that fit the defendants. Eyewitnesses also identified the getaway car, which had been found in the Braintree High School parking lot shortly after the robbery. A latent fingerprint found on the getaway car was identified as Cleveland's and samples of hair taken from a sweatshirt found in or near the same car were identified as Lewey's. Given the substantial independent evidence against Cleveland and Lewey, we conclude that McDonough's recounting of Scadding's remarks, which in no way referred to them, was not so prejudicial that the district court abused its discretion in denying the motion for severance.

Cleveland and Lewey insist that the district court, by ordering McDonough to tailor his testimony, caused that testimony to be "perjurious and distorting." But McDonough's testimony was accurate enough so far as it went. *See Kershner,* 432 F.2d at 1071; *Cf. United States v. Fosher,* 568 F.2d 207, 214–15 (1st Cir. 1978) (inartful masking of mugshots reversible error; mugshots may be admissible if incriminating indicia concealed or removed). The suggestion that Cleveland and Lewey were prejudiced by the tailoring of McDonough's testimony in that they were unable to cross-examine concerning discrepancies in different versions of McDonough's account of Scadding's statements does not warrant relief. Appellants' counsel were able to cast doubt on

McDonough's truthfulness by cross-examining him extensively about prior inconsistencies in his account of the meeting in his apartment, about his receipt of money and assistance from the F.B.I., and about his possible motives. To the extent that further cross-examination was allegedly hampered because it would have involved probing McDonough's earlier, unsanitized reports of the second meeting, such inquiry was beyond the scope of McDonough's direct testimony. Fed.R.Evid. 611(b). Furthermore, discrepancies in the account of the second meeting that related to Scadding were brought out by Scadding's attorney during his cross-examination.

■ Cleveland and Lewey argue that there was prejudicial error in the district court's charge to the jury. The criticized instruction came near the end of the charge and was as follows:

"On the evidence which is before you you may find that one of the three defendants on trial did not actually enter the Hancock Bank and Trust Company on January 20 during the robbery, since the defendant, by and large, talked about two men being in the Bank."

Cleveland and Lewey argue that the court erred in saying that, "the defendant, by and large, talked about two men being in the Bank." They point out that the only defendant who took the stand—Lewey—never stated that two men had been in the Bank and suggest that the Court must have been referring to that portion of what Scadding said to McDonough that was not part of the record. Thus they say that the charge was "a misstatement of fact" and "enormously prejudicial in that it withdrew from jury consideration the key question: Whether or not the three defendants on trial were the three men involved in the bank robbery."

■ While Cleveland and Lewey insist otherwise, we find that they failed to preserve this point for appeal. After the charge, Cleveland objected to the use of the word "defendants," but his objection was clearly directed to the first part of the court's charge:

". . . you commented on the evidence that they could find that one of the defendants did not enter the bank . . . [T]hat would be my objection. It presupposes, your Honor, that, in effect, you are saying to the jury: The three are guilty—the three defendants."

The court agreed to clarify this point and gave the following corrective instruction:

"In the course of my instruction to you I said that you could find one of these three defendants did not enter the bank. I have been asked to ask you to disregard that statement and say that, on the evidence, you can find that two men entered the bank, that is substituting the word 'men' for defendants."

Cleveland again objected, saying that what the court had said was, "a conclusion of the fact that two of the defendants—two men—did enter and the third was outside. It is almost a conclusion on your Honor's part." This leads us to understand that Cleveland was suggesting, albeit not very clearly, that the court had interpreted the evidence for the jury. Cleveland or Lewey did not remotely suggest to the court that they objected to the use of the word "defendant" in the second part of the court's sentence. We add that the court's misstatement was patently not plain error. Indeed, we cannot say that, even had a proper objection been registered, it would have warranted reversal. The slip would have to be considered in the context of a lengthy and, insofar as appears, otherwise accurate and full charge. The court instructed the jury both in this sentence and in several other parts of its charge that it was the sole finder of fact.

■ Cleveland alone raises a third argument, that the court improperly limited his cross-examination of two eyewitnesses to the robbery and of the F.B.I. agents who had dealt with them. During cross-examination Cleveland sought to establish that the two eyewitnesses had been shown a spread of photographs containing a picture of Cleveland but had failed to identify him. There was no testimony on direct examina-

tion, however, dealing with the witnesses' ability to identify the robbers; the witnesses merely described what they had seen.[5] Nor did Cleveland lay a foundation for admitting the evidence by showing that the witnesses later had purported to recognize Cleveland as one of the robbers. None of the eyewitnesses were asked to identify any of the robbers in court. Since their ability to identify the defendants as the bank robbers was not raised on direct and was not in issue, the court did not abuse its discretion in refusing to let the issue be raised on cross-examination. Fed.R.Evid. 611(b). The court did tell defense counsel that they would be allowed to argue that none of the witnesses had identified any defendant in court, and they indicated that this was what they were "looking for." We do not see how Cleveland was prejudiced by this arrangement.

*Affirmed.*

5. One witness' testimony, for example, was simply that he saw a robber on top of the counter in the bank and a white male waiting next to the bank in a tan Ford that he later saw drive off.