**UNITED STATES of America, Appellee,**

v.

**Charles LOCHAN, Defendant-Appellant.**

**No. 81–1170.**

United States Court of Appeals,
First Circuit.

Argued Jan. 4, 1982.
Decided April 1, 1982.

Dennis Levandoski, Portland, Maine, by appointment of the Court, for appellant.

Margaret D. McGaughey, Asst. U. S. Atty., Portland, Maine, with whom Richard S. Cohen, U. S. Atty., Portland, Maine, was on brief, for appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Charles Lochan appeals his conviction for possession of 1468 grams of hashish with intent to distribute in violation of 21 U.S.C. § 841(a)(1)[1] and 18 U.S.C. § 2.[2] Lochan was tried together with Juniour Fraser for the offense. Lochan raises four arguments on appeal: first, that the hashish on which his conviction was based was obtained in violation of his fourth amendment rights and should have been excluded; second, that evidence adduced at trial was insufficient to prove his knowing possession of the hashish; third, that it was error not to sever his trial from that of Fraser; fourth, that the district court improperly instructed the jury as to the illegal nature of the hashish.

The chain of events leading up to the instant appeal began on January 20, 1980, when Maine State Trooper Herbert Cram stopped an automobile, a 1973 Camaro, for speeding on Interstate 95 near Brunswick, Maine. Cram arrested the driver, Lochan, for travelling in excess of thirty miles per hour over the posted speed limit. Lochan was handcuffed, placed in Cram's cruiser, and driven to Brunswick Police Station. Fraser, the only passenger in the Camaro and its owner, followed Cram to the station.

En route to the station, Cram learned, during a routine radio conversation with state police barracks in Scarboro, Maine, that Lochan was wanted in Florida on drug charges and that Fraser was sought in New Jersey for similar reasons. On arrival at the station, Cram arrested Fraser on the New Jersey fugitive warrant.

While awaiting a bail commissioner, Lochan and Fraser were booked and an inventory of their personal belongings was taken. Lochan had in his possession Fraser's registration for the Camaro and approximately $1,200 in cash stuffed in various pockets. Fraser had $800 in cash and two driver's licenses in his name, one from New York and the other from Virginia.

The Camaro was impounded pursuant to standard procedure because it would be some time before bail could be set. The Brunswick Police Station lacked storage space, so the car was towed to a nearby service station. Before the car was towed, Cram asked for and received Fraser's permission to search it. Cram and a Brunswick police officer performed what Cram described as a "cursory" inspection of the interior of the Camaro. Cram discovered a partially smoked marijuana cigarette on the floor in front of the driver's seat and seized it.

At about this time, and before the booking process had been completed, Cram learned that New Jersey no longer sought Fraser because of the age of the drug charge. Cram then issued a summons to Fraser for allowing a motor vehicle to be operated in violation of a Maine law, a misdemeanor.

Cram contacted Sergeant Bailey of the Maine State Police Division of Special Investigations, who in turn contacted Special Agent Michael Cunniff of the Drug Enforcement Administration. Cunniff came to the Brunswick station, and Cram discussed the case briefly with him but did not mention the marijuana cigarette. By this time, Fraser's release on bail on the misdemeanor was imminent, so Cunniff questioned him in Cram's presence. After his rights were read to him,[3] Fraser explained that he had accompanied Lochan to visit a friend in Madawaska, Maine, whose surname and address he did not know. Fraser stated that the $800 in his possession were

---

1. 21 U.S.C. § 841(a)(1) provides in pertinent part as follows:

[I]t shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]

2. 18 U.S.C. § 2 provides in pertinent part as follows:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

3. At all relevant times, Lochan and Fraser were properly informed of their rights.

savings and borrowings he had made for the trip. Fraser refused Cunniff permission to search the Camaro.

Cunniff and Cram then questioned Lochan. Lochan had come to Maine to visit a friend for the weekend, he said, to discuss potential employment with him. Lochan said that he had saved up $1,200 for the trip.

After these interviews, Cram told Cunniff about the marijuana cigarette discovered in the Camaro. Cunniff decided that he had probable cause to believe that the Camaro had been used to facilitate a drug transaction, and, believing Fraser's release to be imminent, he seized the automobile pursuant to 21 U.S.C. § 881(a)(4) and 19 C.F.R. §§ 162.22(a), 162.63 (1981). According to Cunniff, DEA regulations require inventories of seized vehicles, so he requested the owner of the service station where the Camaro had been towed to make the car available for his inspection. Cunniff, Cram, and another state trooper then searched the car. They discovered several hollow spaces behind the spare tire in the trunk and behind the plastic panels on the doors and on the back of the front seats. The screws holding the panels had been scratched, suggesting that they had been removed and replaced several times. The three men also removed the rear seat on the driver's side and found, wrapped in newspaper and plastic, several packages that contained a little more than three pounds of hashish. Lochan and Fraser were then charged with possession of hashish with intent to distribute it.

Lochan and Fraser sought to suppress the hashish at a hearing the day before the presentation of evidence began, but the district court denied their motion. The next day Lochan failed to appear for trial. The proceedings were postponed for a few hours while fruitless attempts were made to locate him. Determining that Lochan had absented himself voluntarily after the trial

had begun, the district court found that circumstances weighed in favor of going ahead with the trial in Lochan's absence under Fed.R.Crim.P. 43(a), (b). Lochan and Fraser were both convicted after a two-day trial. Lochan only appeals.

The first issue is whether the district court erred when it denied Lochan's motion to suppress the hashish found by Cunniff. Lochan argues that Cunniff possessed neither a warrant nor probable cause to seize the Camaro and that the seizure therefore violated his fourth amendment rights. Consequently, he urges, discovery of the hashish was the fruit of an illegal search, and should have been excluded at the suppression hearing.

■ The first inquiry in examining a fourth amendment claim is whether the defendant had a reasonable expectation of privacy in the area searched or the item seized.[4] *Rakas v. Illinois*, 439 U.S. 128, 140–50, 99 S.Ct. 421, 428–434, 58 L.Ed.2d 387 (1978). If the defendant does have such an expectation, then the court must determine the reasonableness of the search and seizure. Lochan did not address the issue of his reasonable expectation of privacy in his brief, but did discuss it briefly at the suppression hearing and in oral argument before this court. The district court did not rule on appellant's privacy expectation because it was reluctant to "rule definitively" in an area of law that was in a "fluid state." It proceeded directly to the constitutional issue and found that neither the seizure nor the subsequent search of the Camaro was unconstitutional.

■ We appreciate the district court's reluctance to probe the expectation of privacy question, but feel we must inquire into it. We conclude that appellant had no reasonable expectation of privacy in the automobile. This result is not arrived at easily. It is now settled that a defendant charged

---

4. This inquiry is often referred to as a "standing" issue, although it is not an inquiry that serves the function of traditional standing doctrine, which is to enable a federal court to determine whether there is such a case or controversy that it may take jurisdiction of it un-

der Article III. "[D]efinition of [fourth amendment] rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978) (citations omitted).

with a crime of possession may only claim the benefits of the exclusionary rule if his own fourth amendment rights have been violated, that is, if he had a reasonable expectation of privacy in the area searched or in the object that he is charged with possessing. There is no longer automatic standing in such cases. *United States v. Salvucci*, 448 U.S. 83, 95, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619 (1980). But, as the district court pointed out, the standards for determining how far a defendant's personal fourth amendment rights extend, the limits of what constitute a reasonable expectation of privacy, are not yet settled.

Three recent Supreme Court opinions offer some guidance. The first, *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 involved a police search of a suspected getaway car in which the owner was driving and the petitioners were passengers. The police found a box of rifle shells in the glove compartment and a sawed-off rifle under the front passenger's seat. Petitioners were subsequently convicted of armed robbery. At their trial, petitioners sought to have the rifle and shells suppressed on fourth amendment grounds, but the trial court held that they lacked standing to object to the lawfulness of the search. *Id.* at 131, 99 S.Ct. at 424. The Supreme Court affirmed (although it rejected the "standing" label), stating that fourth amendment rights are personal rights that may not be asserted vicariously. *Id.* at 133, 99 S.Ct. at 424. The purpose of the exclusionary rule, the Court said, is to effectuate the guarantees of the fourth amendment, and therefore only defendants who have had those rights violated may benefit from the rule's protection. *Id.* at 134, 99 S.Ct. at 425. The touchstone for personal fourth amendment rights is a reasonable expectation of privacy in the premises searched or the item seized. *Id.* at 143, 99 S.Ct. at 430. *See also Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). The *Rakas* Court did not, however, specifically set out the factors that bear on the existence of a reasonable expectation of privacy, but it did make several points. Legitimate presence on the premises at the time of the search, earlier considered a basis for claiming a fourth amendment right, *Jones v. United States*, 362 U.S. 257, 265–67, 80 S.Ct. 725, 733–734, 4 L.Ed.2d 697 (1960), no longer provided an automatic fourth amendment right but was still relevant to one's expectation of privacy. *Rakas v. Illinois*, 439 U.S. at 149, 99 S.Ct. at 433. It is noteworthy that petitioners in *Rakas* "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized," and, unlike other cases, petitioners did not have dominion or control over the automobile. *Id.* at 148–49, 99 S.Ct. at 432–433. The Court also emphasized a point of more limited applicability: the area under the seat of the car and the glove compartment are "areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." *Id.*

Two more recent cases concerned the expectation of privacy issue where defendants are charged with crimes of possession. The older rule was that possession gave a defendant "automatic standing" to challenge the search or seizure of the object possessed on fourth amendment grounds. *Jones v. United States*, 362 U.S. at 261–65, 80 S.Ct. at 731–733. In *United States v. Salvucci*, 448 U.S. at 85, 100 S.Ct. at 2549, the Supreme Court overruled this principle. Property ownership, the Court said, did not necessarily give the owner a right to claim that search or seizure of the property violated his fourth amendment rights, but it was "clearly a factor to be considered." *Id.* at 91, 100 S.Ct. at 2552. A similar holding issued in *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). In that case, defendant claimed to own drugs that were seized during a search of a companion's purse. Ownership was "undoubtedly one fact to be considered," the Court said, but it was not controlling. *Id.* at 105, 100 S.Ct. at 2561. In noting defendant's lack otherwise of a privacy expectation in the goods seized, the Court observed that the defendant "had never sought or received access to [his companion's] purse prior to that sudden bailment" of the drugs,

*id.*, and that the defendant had no "right to exclude other persons from access to [his companion's] purse," *id.* Defendant had also admitted during the suppression hearing that he had no subjective expectation of privacy in the purse. *Id.* at 104 n.3, 105, 100 S.Ct. at 2561, n.3. *Rawlings* also held that the defendant bears the burden of proving his expectation of privacy. *Id.* at 104, 100 S.Ct. at 2561.

■ From these cases, we conclude that at least the following factors are relevant to a privacy expectation: legitimate presence in the area searched, possession or ownership of the area searched or the property seized, prior use of the area searched or the property seized, ability to control or exclude others' use of the property, and a subjective expectation of privacy. The burden of proof is on the defendant.

■ In the instant case, application of these standards fails to support appellant's claim that he had a reasonable expectation of privacy.[5] Appellant relies upon the facts that he was driving the Camaro when it was stopped, that he had the vehicle's registration in his pocket, and that he had been on a trip several hundred miles from home. The fact that Lochan was driving, presumably with Fraser's consent, is one factor to be considered, as is the fact of the long trip, which would engender a slightly greater privacy expectation than would a short trip. Possession of the vehicle registration indicates control, but this is diluted by the owner's presence. These facts are far outweighed by several others. Appellant did not own the car, nor was there evidence that he had used the car on other occasions. There was no evidence as to the responsibility or control appellant had over the automobile other than the fact that he was driving it when stopped. According to the evidence, he had no luggage or other personal belongings stored in the trunk or behind the seat, which might have produced a privacy expectation in those storage areas. Appellant also did not show that he had a subjective expectation of privacy in the Camaro. In addition, appellant never claimed any interest in the hashish seized.[6] Appellant failed to meet his burden of proof of a privacy expectation.

We would ordinarily hesitate before deciding an issue on grounds not considered by the district court, particularly when the issue is so fact-dependent. The facts in this case are so overwhelmingly against appellant, however, that we are on certain ground in reviewing the transcript of the suppression hearing. The only witnesses at the hearing were trooper Cram and agent Cunniff. Appellant had ample opportunity to present more evidence, and, because at the time of the hearing *Salvucci* and *Rawlings* had been published for about three months, he had notice of the standards applied on review.

■ Lochan next argues that there was insufficient evidence that he knowingly possessed the hashish found in the automobile. In examining this contention, we view the evidence, together with all reasonable inferences that may legitimately be drawn therefrom, in the light most favorable to the government. *United States v. Indorato*, 628 F.2d 711, 719 (1st Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980), citing *United States v. Gabriner*, 571 F.2d 48, 50 (1st Cir. 1978). The burden

---

**5.** Our conclusion that appellant did not enjoy a reasonable expectation of privacy in the automobile searched is confirmed by dictum in *Rakas*.

> [Petitioners] made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. *Like the trunk of an automobile*, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy.

*Rakas v. Illinois*, 439 U.S. 128, 148–49, 99 S.Ct. 421, 432–433, 58 L.Ed.2d 387 (1978) (emphasis supplied).

**6.** Appellant could have testified at the suppression hearing that he had some interest in the hashish without fear that that testimony would be used against him at trial, *Simmons v. United States*, 390 U.S. 377, 389–94, 88 S.Ct. 967, 973–976, 19 L.Ed.2d 1247 (1968), at least not as direct evidence. *See United States v. Salvucci*, 448 U.S. 83, 93–94, 100 S.Ct. 2547, 2553 -2554, 65 L.Ed.2d 619 (1980).

nevertheless is on the government to prove beyond a reasonable doubt every element of the crime charged. *United States v. Gabriner,* 571 F.2d at 50. The government may prove its case through the use of circumstantial evidence so long as the total evidence, including reasonable inferences, is sufficient to warrant a jury to conclude that the defendant is guilty beyond a reasonable doubt. *United States v. Mehtala,* 578 F.2d 6, 10 (1st Cir. 1978); *United States v. Gabriner,* 571 F.2d at 50.

■ Among the elements that the government was required to prove in this case was that Lochan's possession of the hashish was knowing. *United States v. Morgan,* 581 F.2d 933, 936 (D.C.Cir.1978); *United States v. Pope,* 561 F.2d 663, 670 (6th Cir. 1977). Knowledge may be inferred from possession, that is, dominion and control over the area where the contraband is found. *See United States v. Chadwick,* 532 F.2d 773, 784 (1st Cir. 1976), *aff'd,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (finding defendant's dominion and control too slight to support inference of knowledge). Drivers generally have dominion and control over the vehicles that they drive. *See, e.g., United States v. Nieto,* 510 F.2d 1118, 1121 (5th Cir.) (per curiam), *cert. denied,* 423 U.S. 854, 96 S.Ct. 101, 46 L.Ed.2d 78 (1975); *United States v. Ramos,* 476 F.2d 624, 625 (9th Cir.), *cert. denied,* 414 U.S. 836, 94 S.Ct. 182, 38 L.Ed.2d 72 (1973). *But see United States v. Chadwick,* 532 F.2d at 784.

The government's evidence showed that Lochan was driving an automobile that contained just over three pounds of hashish.[7] The automobile was stopped during a long trip, so Lochan's control over the vehicle was not fleeting. In addition, although not the owner, Lochan was carrying the auto-mobile registration. Finally, despite the length of the trip and the two men's overnight stay in Madawaska, neither had any luggage, a suspicious circumstance that could give rise to an inference of guilty knowledge on the part of the defendants. *Cf. United States v. Villalon,* 605 F.2d 937, 938–39 (5th Cir. 1979) (per curiam) (defendant's awareness of suspicious circumstances surrounding automobile found to contain marijuana supported inference of knowledge under 21 U.S.C. § 841(a)(1)). We conclude that the evidence was sufficient to support the jury's finding that Lochan's possession was knowing.

To buttress his challenge to the sufficiency of the evidence, Lochan directs us to *United States v. Jones,* 518 F.2d 64 (9th Cir. 1975), but we find no help for him there. In *Jones,* the fact that heroin was found secreted in the vagina of a passenger in defendant's automobile was held insufficient to raise an inference of knowledge of the heroin on the part of defendant. *Id.* at 68. In so holding, the Ninth Circuit Court of Appeals refused to question its opinions in other cases that permitted the imputation of knowledge to a defendant driver where the contraband was located in the trunk, glove compartment, door panel, or instrument panel of the automobile. *Id.* at 67–68, citing *United States v. Ramos,* 476 F.2d 624 (presence of forty-nine kilograms of marijuana in trunk allowed inference of driver's knowledge); *Rodriguez v. United States,* 378 F.2d 256 (9th Cir. 1967) (marijuana secreted in door panels raised same inference). "These cases," the Ninth Circuit said, "proceed on the assumption 'that a driver exercises dominion and control over his vehicle and its contents, from which dominion and control "knowing possession" of the contraband that it contains may be inferred.' *United States v. Martinez,* 514

---

7. The seeming contradiction between finding that control over a motor vehicle by a nonowner driver gives rise to an inference of knowledge of the vehicle's contents and finding that the driver does not have an expectation of privacy in the vehicle or its contents is irrelevant. "[A] prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction." *United States v. Salvucci,* 448 U.S. 83, 90, 100 S.Ct. 2547, 2552, 65 L.Ed.2d 619 (1980).

F.2d 334, 338 (9th Cir. 1975)." *United States v. Jones*, 518 F.2d at 68. The Ninth Circuit also declined to question its cases imputing knowledge of contraband to passengers who exercised dominion and control over the area of the vehicle where the contraband is found. *Id.* Under the Ninth Circuit's decisions, an inference that Lochan knew of the hashish would be permissible.

■ Lochan's third argument is that the district court erroneously denied his motions for severance under Fed.R.Crim.P. 14.[8] Denial, Lochan contends, caused him undue prejudice in two ways. First, the jury likely considered his absence from trial to be evidence of his guilt. Second, evidence admitted to rebut Fraser's own testimony was wrongfully admitted as to Lochan. This severe prejudice could have been avoided, Lochan argues, by ordering separate trials, the cost of which would have been minimal. The decision whether to sever a joint trial is a matter within the discretion of the district court, and we will reverse only if that discretion was abused. In arguing an abuse of discretion, a party must make a strong showing of prejudice. *United States v. Cleveland*, 590 F.2d 24, 27–28 (1st Cir. 1978); *United States v. Luna*, 585 F.2d 1, 4 (1st Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978); *United States v. Smolar*, 557 F.2d 13, 21 (1st Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977).

■ With respect to Lochan's first claim of prejudice, it is well-settled that a defendant is entitled to be present at his trial but that this right may be waived by voluntary and deliberate absence from the trial without good cause. *United States v. Taylor*, 478 F.2d 689, 691 (1st Cir.), *aff'd*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (per curiam); *United States v. Miller*, 463 F.2d 600, 603 (1st Cir.), *cert. denied*, 409 U.S. 956, 93 S.Ct. 300, 34 L.Ed.2d 225 (1972); *see* Fed.R.Crim.P. 43(b)(1).[9] A district court's finding that a defendant has voluntarily and without justification absented himself from the trial will be upheld unless clearly erroneous. *United States v. Pastor*, 557 F.2d 930, 933 (2d Cir. 1977).

■ The record in the instant case supports the district court's finding that Lochan had voluntarily absented himself after the trial had begun. Lochan was present when the jury was impanelled and sworn and at the suppression hearing, where he was notified that presentation of evidence would begin the next day. Lochan then failed to appear, and the district court undertook vigorous but futile efforts to locate him. No excuse was offered at the time for his absence. The district court therefore properly found that he was absent voluntarily.

■ Once voluntary absence is found, a district court must still determine, on motion, whether a severance would nevertheless be appropriate. Among the factors relevant to the district court's exercise of its discretion to sever are the following: the likelihood that a joint trial could take place in the future with the absent defendant present, the present codefend-

---

**8.** Fed.R.Crim.P. 14 provides in pertinent part as follows:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

**9.** Fed.R.Crim.P. 43(b)(1) provides as follows:

*(b) Continued Presence Not Required.* The further progress of the trial to and in-

cluding the return of the verdict shall not be prevented and the defendant shall be considered to have waived his right to be present whenever a defendant, initially present,

(1) voluntarily absents himself after the trial has commenced (whether or not he has been informed by the court of his obligation to remain during the trial) [.]

The constitutionality of Fed.R.Crim.P. 43(b) was upheld in *Taylor v. United States* 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973) (per curiam).

ant's right to a speedy trial, the difficulty of rescheduling the trial, and the burdens on the government and the court in running two trials where the evidence is overlapping. *United States v. Benavides*, 596 F.2d 137, 139–40 (5th Cir. 1979); *United States v. Pastor*, 557 F.2d at 934; *United States v. Tortora*, 464 F.2d 1202, 1210 (2d Cir.), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972).

The district court here considered these and other factors, and there was no abuse of discretion. It noted that both defendants had been properly joined under Fed.R. Crim.P. 8(b)[10] and that a second trial of Lochan alone would duplicate Fraser's, including the same facts and witnesses. The district court also considered the burdens that two trials would impose on the government, the court, and the jurors. The government was ready to proceed with its case against both defendants, and the court and jurors were also prepared to proceed. The district court recognized that Lochan's right to be present at his trial, particularly his ability to assist in his own defense, weighed against these factors. It observed, however, that Lochan had conferred with his counsel prior to trial and that as a result of the suppression hearing he knew the case against him. Even in Lochan's absence, his counsel was on hand to cross-examine the government witnesses and Fraser. Any weaknesses in Lochan's defense caused by his absence did not, the district court concluded, outweigh the factors favoring a joint trial even with Lochan absent. We find that it acted within its discretion in ordering the trial to go forward.

█ Lochan's second attack on the denial of a severance relates to the admission of evidence of hidden storage spaces in the Camaro. In examining this claim, we are again limited to determining whether the district court abused its discretion, *United States v. Luna*, 585 F.2d at 4–5; *United States v. Smolar*, 557 F.2d at 21, so the question here is whether the evidence caused such severe prejudice that a severance was required.

The evidence came in the following way. In his own defense, Fraser testified that he had no knowledge of the hashish in the Camaro. On cross-examination and later in its rebuttal case, the government, for the reason that the capacity of the car to carry concealed material was probative of Fraser's knowledge of the hidden hashish, sought to introduce evidence that the door and seat panels appeared to have been removed several times. Counsel for Lochan objected on the ground that it showed prior bad acts that tended to suggest an ongoing conspiracy of which Lochan was a part. The district court agreed and admitted the evidence only against Fraser. It also offered to instruct the jury that the evidence could be considered only against Fraser unless the jury found that Lochan had knowledge of the condition of the car. Lochan's counsel stated that he did not want the instruction given at that time and moved for a severance. The court denied the motion and again offered to give the limiting instruction. Counsel for Lochan decided to wait until the evidence had come in before having the instruction given. After the evidence was presented, however, counsel did not request the instruction, and the district court did not give it. Lochan now argues that this oversight shows that his severance motion should have been granted because the district court could have severed at that time without undue inconvenience.[11]

---

10. Fed.R.Crim.P. 8(b) provides in pertinent part as follows:

> (b) *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

11. Lochan does not argue that failure to give the limiting instruction was reversible error or that, apart from the severance question, admission of the evidence fatally infected the case against him.

Although not so labelled, Lochan's argument attempts to invoke a *Bruton*-type claim, *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); evidence admissible only as to one codefendant "spills over" and is incorrectly attributed by the jury to another codefendant. The true grounds for concern in *Bruton* and other cases such as *United States v. Cleveland*, 590 F.2d 24 (1st Cir. 1978), is that the evidence consists of one codefendant's prior confession which is hearsay as to another codefendant and denies him his sixth amendment right of confrontation. This underlying concern is absent here; Lochan's counsel had the opportunity to cross-examine Fraser about Lochan's familiarity with the car. There is no sixth amendment constitutional problem.

Lochan's position, therefore, can only be that the evidence of the hidden storage spaces was so overwhelmingly prejudicial on the issue of his knowledge that his trial should have been severed. We do not agree for several reasons. The evidence of the concealed compartments was directed to Fraser's testimony, so the risk that the jury would attribute it to Lochan was low. In addition, just as Lochan's dominion and control over the automobile at the time of his arrest supports an inference of his knowledge of the hidden hashish, so too, under these circumstances, it supports an inference of his knowledge of the hidden storage spaces. Thus, evidence that such spaces existed supplements this inference. Prejudice from admission of this evidence was minimal, and the district court's conclusion that other factors militating against severance outweighed any prejudice was within its discretion.

We wish to observe that, even had the prejudice been greater, severance was not the only remedy available. *See United States v. Cleveland*, 590 F.2d at 27–28, citing *Bruton v. United States*, 391 U.S. at 133–34 & n.10, 88 S.Ct. at 1626 & n.10. Counsel is ill advised to forego pursuit of an easy remedy, such as a limiting instruction, in the hope that we will find failure to provide a more drastic remedy, such as severance, reversible error.

Lochan's final argument is that the district court erroneously instructed the jury as a matter of law that hashish is a so-called schedule I controlled substance. This classification brings drugs such as hashish within the scope of the statute under which Lochan and Fraser were charged. Hashish is a schedule I substance if it contains tetrahydrocannabinols (THC), 21 U.S.C. § 812, Schedule I (c)(17), which is the "active ingredient" in hashish. Lochan contends that it was a question of fact for the jury whether the hashish in this case contained THC and that the instruction took this issue from the jury. We reject the argument. Because counsel for Lochan never objected to the instruction, which would have enabled the district court to make any needed corrections, we review only for plain error. Fed.R.Crim.P. 52(b); *United States v. Previte*, 648 F.2d 73, 81 (1st Cir. 1981). In addition to instructing the jury that hashish was a schedule I controlled substance, the court instructed the jury that it must be satisfied that the material was in fact hashish. The jury was also instructed that the expert testimony relative to the composition of the material found in the car was not binding on them. There was no error, plain or otherwise.

*Affirmed.*