**UNITED STATES of America**

v.

**Shimika Lavette VAUGHNS**
**David Charles Jenkins**
**Timothy Aubry**

No. 1:01–CR–30.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 28, 2001.

Michelle S. Englade, Assist. U.S. Atty, Beaumont, TX, for plaintiff.

L. Mickele' Daniels, Houston, TX, for Vaughns, Jenkins, defendants.

Harold J. Laine, Jr., Beaumont, TX, for Aubrey, defendant.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

In an indictment returned on February 8, 2001, the Grand Jury in the Eastern District of Texas, Beaumont Division, alleged that:

"On or about September 1, 2000, through September 6, 2000, the defendants, Shimika Lavette Vaughns, David Charles Jenkins, and Timothy Aubry" were conspirators in possession for the purpose of distribution of in excess of more than 50 grams of "crack" cocaine and an unstated amount of marijuana.

Aubry, Jenkins, and Vaughns have filed separate motions to suppress the testimony concerning the contraband because of alleged violations of their constitutional rights under the Fourth, Fifth, and Sixth Amendments to the Constitution.

The court heard the motions and the testimony of officers who made a valid traffic stop and subsequently searched the vehicle with the consent of the driver, David Charles Jenkins. Shimika Lavette Vaughns had rented the vehicle in which Aubry was riding, and was the only person authorized to drive the rental vehicle. Jenkins said that he had not rented the vehicle, but Vaughns had.

The government correctly asserts that the defendant Timothy Aubry has no standing to object to the search in this case. The facts of this case show that defendant Aubry was merely a passenger in a rental vehicle stopped and searched and he has no ownership interest or reasonable expectation to privacy in the vehicle or contents seized and, therefore has no standing to object to the search of the vehicle and items in this case. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980).

Accordingly, the "search and seizure" did not infringe an interest of Aubry which the Fourth Amendment was designed to protect. *Rakas* at 140, 99 S.Ct. 421. Therefore, the defendants Aubry and Jenkins are not entitled to raise any issues surrounding the search of this vehicle and its contents since they had no reasonable expectation of privacy in the vehicle or contents seized.

Further, the court, heaving heard the testimony under oath of the witnesses, and having observed their demeanor, finds there was probable cause to stop and search the vehicle being driven by the defendant Jenkins based on a valid traffic violation. And upon determining that the vehicle was a rental vehicle, officers discovered that one of the passengers in the vehicle, Shimika Lavette Vaughns, was the only authorized driver of that vehicle. At

that time, the officers received oral and written consent to search the vehicle from Vaughns. This consent dispensed with the requirement of a search warrant as to her.

In addition, based upon the testimony of the arresting officers, the court finds that any statements made by defendant Timothy Aubry were made voluntarily and after being read his Miranda warnings and waiving those rights.

However, at trial the court will first hear all relevant testimony concerning any and all statements outside the presence of the jury, and if admitted for the jury's consideration, it will then instruct the jury concerning the voluntariness of any and all statements are to be decided by the jury and the government must prove this issue beyond a reasonable doubt.

After the broad outline set forth above, the court specifically will describe the stop, the search and the venue challenge.

### THE SEARCH

On September 6, 2000, undercover officers with the Louisiana State Police, Narcotics Division, observed a vehicle which they believe to have an intoxicated driver cross the center line several times. These undercover officers followed the vehicle and eventually made contact with a Bunkie, Louisiana, police officer and informed him of their suspicions. After this, the Bunkie officer, Officer James Dyess, observed the same erratic driving and effected a traffic stop on the vehicle for "Driving left of the Center Line," which is a valid traffic violation in the State of Louisiana. There were three occupants of the vehicle.

Upon making contact with the driver of the vehicle, Officer Dyess immediately recognized him to be David Jenkins, a person he has investigated for possible narcotics trafficking in that area in the past who consistently used rental vehicles in his drug dealings. On this date, Jenkins was unable to produce a driver's license and was driving a rental vehicle. Upon producing the rental papers for the vehicle, Officer Dyess discovered that Jenkins was not the renter of the vehicle and was not an authorized driver of the vehicle.

Since Jenkins was not able to produce a driver's license, Officer Dyess called in the registration of the vehicle and a driver's license check on Jenkins. While awaiting the return of these checks, Officer Dyess consulted with the LSP officers who were waiting behind Officer Dyess' vehicle to assist him if needed. Trooper Byron Juneau, a narcotics officer with the LSP, also immediately recognized Jenkins when he walked up to Officer Dyess. Trooper Juneau had received information from several different sources that Jenkins was a possible drug courier in the Bunkie area. When Trooper Juneau approached Officer Dyess, Jenkins became noticeably nervous and anxious. At that time, he kept watching Trooper Juneau and began pacing back and forth. Trooper Juneau also received information just several weeks prior to this night that Jenkins often carried narcotics inside the door panels of vehicle when he brings them to this area.

Based upon Officer Dyess' information, as well as Trooper Juneau's general and specific information regarding Jenkins, and Jenkins' actions when Trooper Juneau appeared at the scene, reasonable suspicion was developed in order to detain the occupants of the vehicle until such suspicion could be dispelled. As Officer Dyess gave Jenkins a traffic ticket for not having a driver's license and completed the initial traffic stop, Trooper Juneau approached Jenkins with Officer Dyess and began investigating the possible narcotics violations. Within a very short time, Trooper Juneau requested consent to search the vehicle from Jenkins. Jenkins informed Trooper Juneau that he could not give it because it was not his car. Jenkins then

informed Trooper Juneau that the female passenger, Shimika Vaughns, was responsible for the vehicle. At that point, Trooper Juneau stated he received both oral and written voluntary consent to search the vehicle from Vaughns.

A certified drug detecting canine was then called to the scene and alerted on the rear driver's side door. At that point, officers discovered suspected crack cocaine and marijuana inside the door panel of that door. Officers subsequently discovered more suspected crack cocaine and marijuana inside the rear passenger side door panel also. The total weight of the crack cocaine was determined to be 310.5 grams and the weight of the marijuana was determined to be 1,767 grams. At that point, all three occupants of the vehicle were placed under arrested and transported to the Bunkie jail.

During the discovery of the drugs at the scene, Shimika Vaughns, who had already been advised of her Miranda warnings two separate times prior to that, testimony was elicited that Vaughns informed Juneau and Trooper Bobby Cameron that she wanted to talk with them without the other two suspects hearing. She informed them that she had loaned the vehicle to David Jenkins approximately one hour before *leaving Beaumont that day,* and when he returned, Timothy Aubry, the other passenger, was in the vehicle with Jenkins. Jenkins then asked Vaughns to ride with them to Louisiana.

After being placed in jail, Vaughns agreed to provide another statement to Troopers Juneau and Cameron. Once again she was mirandized and signed a waiver of rights form. At that point, she told the Troopers the same information but also stated that she knew there were drugs in the car and that Jenkins was bringing drugs to Louisiana but that she did not put them there.

Later, it was determined through fingerprint analysis that the fingerprints of David Jenkins and Timothy Aubry were both found on the packaging of the discovered narcotics.

### APPLICABLE LAW

The Fourth Amendment prohibits unreasonable searches and seizures. *United States v. Shabazz,* 993 F.2d 431, 434 (5th Cir.1993). The stopping of a vehicle and the detention of its occupants is as "seizure" within the meaning of the Fourth Amendment. *Id.* Seizures of motorists who are merely suspected of criminal activity are to be analyzed under the framework established in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Id.* A routine traffic stop is a limited seizure which may closely resemble an investigative detention and the Fifth Circuit and the U.S. Supreme Court have used *Terry* to analyze cases in which motorists were stopped for violating traffic laws. *Id.* at 435. Under *Terry,* the judicial inquiry into the reasonableness of search and seizure "is a dual one-whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place". *Id.*

A. *The Initial Stop Was Proper.*

Here, as in *Shabazz,* Jenkins was not merely suspected of criminal activity, but was actually observed by the detaining officers to commit the traffic offense of "driving left of the center line," and was stopped on that basis. Therefore, the initial stop of the vehicle was lawful.

B. *Jenkins and Aubry have no standing to contest the search of the vehicle.*

In determining whether a defendant has standing to bring a Fourth

Amendment challenge to an allegedly illegal search: "Such a determination depends on 1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and 2) whether the expectation of privacy is one which society would recognize as [objectively] reasonable." *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037. Under this analysis, in this case, the passenger, Timothy Aubry, certainly lacked standing to challenge the validity of the search. Further, the unauthorized driver of the rental vehicle, David Jenkins, also appears to lack standing to challenge the validity of the search.

As either a passenger or unauthorized driver in a rented vehicle, Aubry and Jenkins have no property or possessory interest in the vehicle whatsoever and even less of a privacy interest inside the door panels of the vehicle. Neither of them owned it, nor rented it. The rental agreement specifically stated that the car was to be driven only by the person authorized by the car rental company. Aubry and Jenkins were not so authorized. Typically, a passenger such as Aubry, without a possessory interest in the vehicle, lacks standing to complain of its search because his privacy expectation is not infringed. *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir.1993). Furthermore, the Fifth Circuit has declined to adopt a different rule for a driver simply because he is behind the wheel when the car is stopped. *United States v. Riazco*, 91 F.3d 752, 754 (5th Cir.1996). However, the Fifth Circuit has concluded in cases where a person who was not authorized to drive a rental vehicle but was given permission by the person who was so authorized, still did not have a legitimate expectation of privacy because the renter did not have the authority to give control of the car to the defendant. *United States v. Boruff*, 909 F.2d 111, 117 (5th Cir.1990).

As discussed in other circuits, permission of another is only one factor in determining a privacy expectation. However, the First Circuit has even held that the owner (or authorized driver's) presence in the vehicle, lessens the privacy expectation of an unauthorized driver. *United States v. Lochan*, 674 F.2d 960, 965 (1st Cir.1982). This court considered additional factors to determine that the driver of the vehicle did not have standing to contest the search; i.e., no evidence that he had used the car on other occasions, no evidence as to the responsibility or control he had over the automobile other than the fact that he was driving, and no evidence of luggage or other personal belongings. *Id.*

The Fourth Circuit has also held that an unauthorized driver of a rental vehicle, although possibly having permission to drive the vehicle from an authorized driver did not have permission of the rental company, the owner of the vehicle, and therefore, did not have a legitimate expectation of privacy. *United States v. Wellons*, 32 F.3d 117, 119 (4th Cir.1994). The Eighth Circuit has also followed this line of reasoning by requiring the unauthorized driver to "present at least some evidence of consent or permission from the 'lawful owner/renter' to give rise to a legitimate expectation of privacy." *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995).

Because of the facts developed at the suppression hearing, neither Aubry nor Jenkins have standing to contest the search.

### *IMPROPER VENUE*

Aubry contests venue in the Eastern District of Texas, Beaumont Division. If believed, the testimony of Shimika Lavette Vaughns is sufficient to show the entire transaction began in Beaumont, Texas. The overt act of September 6,

2000, was a part of the conspiracy and a conspiracy charge may be tried in any district where an overt act occurs. The venue challenge is OVERRULED.

## CONCLUSION

In conclusion, the motion to suppress and the venue challenge are in all things DENIED and OVERRULED.

It is so ORDERED.