**UNITED STATES of America, Appellee,**

v.

**Louis W. MELUCCI,**
**Defendant, Appellant.**

**No. 89–1387.**

United States Court of Appeals,
First Circuit.

Heard Sept. 12, 1989.

Decided Nov. 1, 1989.

Edward J. Romano, Providence, R.I., was on brief, for defendant, appellant.

Kenneth P. Madden, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before BOWNES, TORRUELLA and MAYER,* Circuit Judges.

* Of the Federal Circuit, sitting by designation.

TORRUELLA, Circuit Judge.

Defendant Louis W. Melucci appeals a decision of the United States District Court for the District of Rhode Island convicting him of possession with intent to distribute marijuana and cocaine. The defendant brings five issues before this court for review: first, whether the defendant/appellant had standing to suppress the results of a search; second, whether a search by the police constituted an impermissible extension of a private search; third, whether the police improperly tested the results of a search; fourth, whether the search of a handbag and car was invalid; and fifth, whether the district court erred in allowing expert testimony on handwriting.

FACTS

Public Self Storage, Inc. ("PSS"), owned by John Cullen, consists of two long buildings surrounded by a chain link fence. Each building contains numerous modular storage units and each unit has its own outside door. Lessees secure the door with their own padlocks. On November 17, 1987, defendant Melucci leased a unit under a false name ("Fusi") and false address. He paid rent through the end of February 1989. By April 1, 1988, the rent on the unit was one month in arrears and John Cullen attempted to contact Melucci via the false name and false address on the lease, obviously without success. On April 5, 1988, Cullen, pursuant to the procedures set forth in the default section of the lease contract, took possession by cutting the padlock off the unit. He entered and observed several boxes covered with old clothes. He lifted some of the clothes off one box and found what he thought was marijuana. Cullen then locked the unit with his own padlock and telephoned the police.

Sergeant Marcoux responded to Cullen's call. Cullen took Marcoux to the unit and showed him the boxes. Marcoux searched the entire unit and found 41 one pound bags of marijuana. Cullen re-locked the unit and awaited the arrival of detective Almond. When Almond arrived, Cullen al-

lowed him to enter the unit. Almond seized the contents of the unit and the cut lock. Cullen relocked the unit.

On April 25, 1988, Melucci complained that he could not get into his unit and paid the past due rent. While he was waiting officers Gauthier and Brunelle were called. These officers knew that a man claiming to be Fusi was in a car at PSS, and that he was there to pay the rent due. From the initial search these officers also knew that a large quantity of marijuana had been seized from the unit on April 5, 1988.

When the officers arrived, they saw the man claiming to be Mr. Fusi, but the defendant/appellant identified himself as Melucci. Melucci was asked to step out of his car. Then, the officers verified through Cullen that Melucci was the person claiming to be Fusi. Melucci was asked for identification. Melucci said that his identification was in a handbag on the front seat. The officers took the handbag from the car and searched it. They saw a waterpipe, two closed film vials, and identification. The police opened the vials, saw that they contained white powder, and took the identification. They then arrested Melucci.

The car was towed to the police department. Pursuant to a search warrant issued on April 25, 1988, the police searched the car and found approximately 500 grams of cocaine and a bale of marijuana.

### 1. *Standing*

■ The district court ruled that Melucci lacked standing to contest the search of the unit. We agree. The defendant has the burden of establishing standing. *United States v. Hershenow*, 680 F.2d 847, 855 (1st Cir.1982). To have standing a defendant must have a legitimate expectation of privacy in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *United States v. Thornley*, 707 F.2d 622, 624 (1st Cir. 1983). Apart from a subjective expectation of privacy and the objective reasonableness of such an expectation, some of the factors that bear on the existence of a legitimate expectation of privacy include: ownership, possession or control of the premises

searched; the ability to control or to exclude others' use of the premises; a legitimate presence on the premises at the time of the search; and the totality of the surrounding circumstances. *United States v. Aguirre*, 839 F.2d 854, 856 (1st Cir.1988); *see also United States v. Lochan*, 674 F.2d 960, 965 (1st Cir.1982).

■ Melucci's failure to pay rent coupled with Cullen's taking possession of the unit pursuant to the lease contract by removing the lock, indicates that Melucci's possession and control over the unit had terminated by the time of the search. Melucci was not present at the time of the search. Furthermore, Melucci rented the unit under a false name and false address. No rent was paid for March or April. Moreover, the lease terminated at the end of February. Under the totality of the circumstances, Melucci has no standing to contest the search of the unit. *Id.* This lack of standing renders discussion of Melucci's second argument—that the police search of the unit constituted an impermissible extension of Cullen's private search and his third argument—that the marijuana was improperly tested as a fruit of a warrantless search—unnecessary.

### 2. *Handbag and car*

■ The initial seizure of the bag was valid. The officers were aware that marijuana was found in the unit rented under Fusi's name at PSS. They knew Melucci paid the back rent on the unit identifying himself as Fusi to the PSS clerk. Officer Brunelle was concerned about a weapon being in the handbag. These facts fall within the reasonable suspicion standard articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ The defendant argues that the seizure of the waterpipe and the search of the film canisters was invalid. We need not address these arguments. A conviction can be sustained against Melucci regardless of this evidence. In view of the 41 one-pound bags of marijuana validly seized from the unit, the 500 grams of cocaine and the bale of marijuana validly seized from

the car, it is superfluous that police found Melucci in possession of drug paraphernalia to sustain this conviction.

■ Excluding the results of the handbag search, the affidavit supporting the search warrant application for the car contained the following facts: a storage unit was leased under a false name (Fusi); 41 one-pound bags of marijuana had been found in the unit; on April 25, 1988, a person identifying himself as Fusi went to PSS and paid back rent on the unit; this person was identified by a PSS clerk as Fusi; and this person (the defendant) identified himself to police as Melucci. This information amounts to a probability of criminal activity sufficient to establish probable cause. *See United States v. Drake*, 673 F.2d 15, 17 (1st Cir.1982). The search of the car was valid.

### 3. *Test results and expert testimony*

■ Melucci argues that the government violated Federal Rule of Criminal Procedure 16(a)(1)(D) by failing to give adequate notice of the presentation of the handwriting expert. Melucci claims that the government should have disclosed the results long before the commencement of trial and that thus, the district court should have excluded the testimony of the handwriting expert. The standard of review of discovery decisions is abuse of discretion. *United States v. Samalot Pérez*, 767 F.2d 1, 4 (1st Cir.1985). Furthermore, in order to succeed on appeal the defendant must prove that this claimed violation prejudiced his case. *United States v. Hemmer*, 729 F.2d 10, 13 (1st Cir.1984).

■ The government filed a Motion for Production of Handwriting Exemplars in August 1988. The first set of exemplars were not given to the government until December 28, 1988 and additional ones were obtained on January 24, 1989. By a letter dated February 6, 1989, the appellant was notified that a handwriting expert identified the handwriting on the PSS lease as that of Melucci. A copy of the report was provided to appellant by letter dated February 8, 1989. The handwriting expert testified on February 10, 1989. Melucci's

attorney objected to the testimony of the expert, but his objections, based on late notice, were overruled.

The government's August, 1988 motion put the appellant on notice that handwriting was in issue. That gave appellant several months before the trial to prepare for the use of a handwriting expert. Furthermore, responsibility for the time of the disclosure of the expert's opinion must be placed in large part on the appellant. Though the motion was filed in August 1988, the first exemplars were not produced until December 1988. The examination and report were completed by January 30, 1989. Appellant's counsel acknowledged knowing of the results on February 7, 1989. The trial began February 9, 1989. The handwriting expert testified on February 10, 1989. The district court did not abuse its discretion in allowing the expert's testimony.

Although the appellant "avers that the testimony regarding the handwriting was very important detrimental evidence against his defense," he does not state how he was prejudiced by the late disclosure or how an earlier disclosure would have changed his defense strategy. The obvious fact that the evidence was detrimental and "pretty much corroborated and cemented the fact that" Melucci rented the unit, does not warrant a finding of inadmissibility. Without a showing of prejudice, due to the late disclosure, the relief requested cannot be granted. *United States v. Hemmer*, 729 F.2d at 13.

For the reasons stated above we *affirm*.