**UNITED STATES OF America**

v.

**Jonathan LEAVER, Defendant.**

**No. 98 CR. 731(SAS).**

United States District Court, S.D. New York.

Jan. 5, 2005.

John J. Tigue, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, New York, for Defendant.

Robin W. Morey, Assistant United States Attorney, United States Attorney's Office, Southern District of New York, New York, New York, for the Government.

## MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

On July 23, 2004, Jonathan Leaver was arrested while on a layover in Hawaii. Leaver was charged in a four-count indictment, returned on July 15, 1998, for mail fraud, wire fraud, and bank fraud, in violation of 18 U.S.C. §§ 1341, 1342 and 1344, based on events that allegedly occurred in 1993. In an Opinion and Order dated December 13, 2004 (the "December 13 Order"), I granted Leaver's motion to dismiss the indictment on the basis of his Sixth Amendment right to a speedy trial. The effect of that Order has been stayed pending an anticipated motion to reconsider by the Government. By letter dated December 23, 2004, the Government requests authorization to issue a subpoena *duces tecum* pursuant to Federal Rule of Criminal Procedure 17(c) to the American Express Company for records pertaining to Leaver's credit card. The Government seeks these records in connection with its anticipated motion for reconsideration. For the following reasons, the Government's request is denied.

## II. BACKGROUND

In the December 13 Order, I made two important factual findings: *first*, that, although Leaver had left the United States before the Government began its investigation and had lived abroad since, he had been living openly without attempting to conceal his whereabouts, and, *second*, that the Government was negligent in its pursuit of Leaver. In making these findings, I relied in part on Leaver's testimony that he had continuously used the same American Express card, issued in the United States in 1978, which is listed under his own name and social security number;[1] that he had filed a change of address with American Express;[2] and that he placed his name, address and phone number on the checks for payment of his credit card bills.[3] In the absence of any attempt by the Government to contest Leaver's statements,[4] I found his testimony credible. I found that this was evidence (among other evidence) that Leaver was living openly; and, because the Government was aware of Leaver's use of an American Express card, and an investigation of the card might have revealed his address, I found that this was evidence (again, among other evidence) of the Government's negligence in pursuing Leaver.

## III. DISCUSSION

■ The Government now seeks to show, in a motion for reconsideration, that, contrary to Leaver's testimony, Leaver did not inform American Express of his addresses in England and France, or pay his bills with checks that declared his addresses.[5] To support this anticipated motion, the Government seeks to subpoena Leaver's American Express credit card records. By letters dated December 27, 29 and 30, 2004, Leaver opposes the requested subpoena.[6]

1. *See* September 24, 2004 Affidavit of Jonathan Leaver ("Sept. 24 Leaver Aff.") ¶ 8. I note that the Government received Leaver's affidavit on or about September 24, but has not sought to rebut the statements at issue here until its letter of December 23, nearly three months later and ten days after the Court's Order.

2. *See id.* ¶ 10.

3. *See id.* ¶ 8.

4. In its initial opposition brief, the Government requested a hearing at which to test the credibility of Leaver's testimony, presumably (although not explicitly) including his statements relating to his American Express account, by way of cross-examination. *See* October 25, 2004 Memorandum of Law in Opposition to Leaver's Motion to Dismiss ("Gov't Mem.") at 2 n. 1. Following extensive additional briefing and correspondence with the Court—during which the Government did not offer any challenge to Leaver's statements relating to his American Express account—"on December 1, 2004, [I] had a telephone conference with the parties to clarify each side's position regarding the necessity for a hearing before the Court could resolve the pending motions. During the conference, both sides agreed there was no need for a hearing." December 9, 2004 Letter to the Court from Robin W. Morey, Assistant United States Attorney ("Morey Letter").

5. However, during a telephone conference before the Court on December 29, 2004, the Government conceded that the documents sought may in fact *support* Leaver. *See* Transcript of December 29, 2004 Telephone Conference ("Dec. 29 Tr.") at 11.

6. The Government argues that Leaver lacks standing to move to quash. *See United States v. Nachamie*, 91 F.Supp.2d 552, 558 (S.D.N.Y. 2000) ("A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter."). Leaver asserts that he has standing on the basis of his interest in his credit card records. It is not necessary to resolve this dispute, as "the Court will nonetheless address [Leaver's] objections because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements

Rule 17(c) provides in pertinent part that

The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

■ Rule 17(c) is not intended to provide "a means of discovery for criminal cases ... but to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." [7] A Rule 17(c) subpoena may not be used for a "general fishing expedition." [8]

The Supreme Court has set out "the simple test a party must meet to enforce a subpoena: '(1) relevancy; (2) admissibility; (3) specificity.' " [9] "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes

something useful will turn up, the requirement of specificity will not have been met." [10]

■ The Government's request must be denied, for two reasons. *First,* Rule 17(c) is intended for the limited purpose of preparation for trial. A Rule 17(c) subpoena may also properly be used to gather documents for a pre-trial or post-trial hearing. [11] However, because the indictment here has been dismissed, no trial or hearing date is expected. The stated purpose of the Government's request is to obtain evidence to support an anticipated motion for reconsideration. [12] That is, the Government does not seek the materials in connection with an anticipated hearing, but hopes that, once it has the materials, a hearing may result. To permit a Rule 17(c) subpoena in these circumstances would be to extend the rule far beyond its limits, transforming it from a carefully circumscribed device to expedite trials and hearings into an effectively unlimited tool for discovery and investigation. [13]

---

of Rule 17(c)." *United States v. Weissman,* No. 01 Cr. 529, 2002 WL 31875410, at *1 (S.D.N.Y. Dec.26, 2002) (citing *Nachamie,* 91 F.Supp.2d at 561; *United States v. Coriaty,* No. 99 Cr. 1251, 2000 WL 1099920, at *6 n. 4 (S.D.N.Y. Aug.7, 2000)).

7. *United States v. Nixon,* 418 U.S. 683, 698, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

8. *Id.* at 699, 94 S.Ct. 3090 (quotation omitted).

9. *Nachamie,* 91 F.Supp.2d at 562 (quoting *Nixon,* 418 U.S. at 700, 94 S.Ct. 3090).

10. *Weissman,* 2002 WL 31875410, at *1.

11. *See* 2 Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure Criminal 3d § 271 (2000) (citing *United States v. Charamella,* 294 F.Supp. 280 (D.Del.1968)). *See also United States v. Winner,* 641 F.2d 825, 833 (10th Cir.1981) ("Although Rule 17 subpoenas are generally employed in advance

of trial, we see no reason why their use should not be available for post-trial motions and sentencing.").

12. The Government has also hinted at other reasons for its subpoena. *See* Affidavit of Robin W. Morey ¶ 6 (stating that the "application is made in good faith as the contents of the subpoenaed documents will be relevant and influential as to the Government's consideration of appropriate actions to take in this matter."); Dec. 29 Tr. at 13 ("There is no doubt it would be in aid of reconsideration. I'm just saying the Government will also make some other use of it."). Insofar as the Government's purpose in seeking this subpoena is something other than to obtain relevant or admissible evidence in anticipation of a trial of this case, the subpoena is clearly improper.

13. *See Bowman Dairy Co. v. United States,* 341 U.S. 241, 220, 71 S.Ct. 675, 95 L.Ed. 879 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by

■ *Second,* the request must be denied because the subpoena cannot produce relevant or admissible evidence. The purpose of the Government's request is to obtain facts not previously presented to the Court for use in an anticipated motion for reconsideration. As Leaver observes, new facts not previously presented to the Court may not generally be offered for the first time in a motion to reconsider.[14]

In the closely analogous context of a suppression order, the Second Circuit has held that a district court has broad discretion to permit the Government to introduce new evidence on a motion for reconsideration, "in the interests of justice."[15] The Second Circuit advised that "vague notions of unfairness, that the government should not have 'two bites' off the same apple, ought not control."[16] However, *Bayless* left open the question of whether the Government was required to justify its

failure to present the new evidence prior to the district court's ruling. The court observed that "some courts have applied a rule requiring the Government—when it moves for reconsideration of a suppression order on the ground that it can introduce new evidence [ ]—to proffer a justification for its failure to present the relevant evidence at the original suppression hearing."[17] However, the court further noted that "other courts, citing a policy in favor of introduction of lawfully obtained evidence, have declined to impose such a justification requirement."[18]

In *Bayless,* the Second Circuit did not need to "decide which of these two approaches is preferable, because [it found] that the government adequately justified its decision" not to introduce at the original suppression hearing the new evidence it offered in its motion for reconsidera-

Rule 17 to give a right of discovery in the broadest terms.").

**14.** "The standard to be applied in deciding reconsideration motions in criminal cases has not been clearly established. Neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules expressly provide for reconsideration motions." *United States v. Delvi,* No. 01 Cr. 74, 2004 WL 235211, at *2 (S.D.N.Y. Feb.6, 2004). However, courts in this district have applied the standard of Local Rule 6.3. *Id.* Under Local Rule 6.3, a motion for reconsideration is appropriate where a court overlooks "controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court." *Range Road Music, Inc. v. Music Sales Corp.,* 90 F.Supp.2d 390, 392 (S.D.N.Y.2000). A motion for reconsideration may not present "new facts, issues or arguments not previously presented to the court." *Davidson v. Scully,* 172 F.Supp.2d 458, 461 (S.D.N.Y.2001).

**15.** *United States v. Bayless,* 201 F.3d 116, 132 (2d Cir.2000).

**16.** *Id.* (quoting *United States v. Tucker,* 380 F.2d 206, 214 (2d Cir.1967)).

**17.** *Bayless,* 201 F.3d at 131 (citing *United States v. Villabona–Garnica,* 63 F.3d 1051, 1055 (11th Cir.1995)) ("By failing to raise [an] issue at [a] suppression hearing without offering any justification therefor, the government waives its right to assert it in subsequent proceedings."); *McRae v. United States,* 420 F.2d 1283, 1286–88 (D.C.Cir.1969) ("If ... the Government wished [on reconsideration] to develop new facts ... we feel that the prosecutor bore some responsibility to suggest to the Court why these facts had not been elicited at the first hearing.").

**18.** *Bayless,* 201 F.3d at 131 (citing *United States v. Rabb,* 752 F.2d 1320, 1323 (9th Cir. 1984)) ("We reject *McRae'* s 'justification' requirement and adopt the Fifth and Seventh Circuits' position: if the record reveals matters which indicate that the evidence was lawfully obtained, the district court may reconsider its suppression order at trial."); *United States v. Regilio,* 669 F.2d 1169, 1177 (7th Cir.1981) ("If matters appearing [after the suppression ruling] indicate that no constitutional violation occurred, society's interest in admitting all relevant evidence militates strongly in favor of permitting reconsideration."); *United States v. Scott,* 524 F.2d 465, 467 (5th Cir.1975).

tion.[19] The Government's new evidence was the testimony of a police officer, which merely "echoed" that of another officer who had testified at the suppression hearing.[20] The Second Circuit found that the Government "had no reason to believe that [the second officer's] testimony would be anything but cumulative."[21] The court also noted that, at the original suppression hearing, the district court had made comments—*e.g.*, "Really then I think we're at one with respect to the facts"—that might have misled the Government into thinking that additional testimony was not needed.[22]

Here, by contrast, it is not possible to avoid choosing between these two approaches. The Government has not offered any valid justification for its failure to seek this evidence prior to the December 13 Order. During the telephone conference on December 29, 2004, the Government attempted to justify its failure by claiming that it was surprised by the weight my decision placed on Leaver's claims relating to his American Express card.[23] This argument is unpersuasive, to say the least. Leaver's intention to move to dismiss the indictment on the basis of

his Sixth Amendment right to a speedy trial has been clear since the start of these proceedings.[24] The question of whether he was living openly is central to that claim. Leaver's statements relating to his American Express card were prominent in his affidavits and briefs in support of his motion to dismiss. The Government cannot plausibly claim that it did not believe that the evidence sought would have been relevant to the determination of Leaver's claims. It certainly would not have been merely cumulative of evidence already in the record: in fact, the Government had offered no challenge to Leaver's statements.

The Government also stated that it did not expect that I would make findings of fact on the basis of the record that was before me, without holding an evidentiary hearing.[25] This contention is baffling. The Government expressly stated that there was no "necessity for a hearing before the Court could resolve the pending motions."[26] Leaver's statements regarding his credit card thus stood uncontested.[27] The Government could not reason-

19. *Bayless,* 201 F.3d at 132.

20. *Id.*

21. *Id.*

22. *Id.*

23. *See* Dec. 29 Tr. at 7. I do not agree that particular weight was placed on the American Express card. This was only one of the many indicia that Leaver was living openly. *See* December 13 Order at 4–8 (noting, *inter alia,* that Leaver lived under his own name; that he filed change of address forms with the London Post Office, and had his mail forwarded to him in Opio; that he applied for and received a United Kingdom driver's license, which listed his London address; that he renewed his United Kingdom passport and had it mailed to him in London; that he purchased and insured a car in his name; that he had bank accounts and health insurance policies in his name; that he was hospi-

talized under his own name in France; and that, following a car accident in France, he gave his name and address to the French police).

24. *See, e.g.,* Transcript of August 17, 2004 Pretrial Conference, Ex. B to Sept. 24, 2004 Affirmation of John J. Tigue, defendant's counsel, at 4.

25. *See* Dec. 29 Tr. at 9–10.

26. *See* Morey Letter.

27. To be sure, the Government contested Leaver's claim that he lived openly in France, but did so by pointing out, *inter alia,* that Leaver never obtained a French driver's license, and that his phone number was listed under the name of his girlfriend. The Government did not take issue with Leaver's statements relating to his credit card, or the

ably expect that I would not make findings of fact in resolving the motion. Clearly, the Government did not expect that it would lose the motion; but that is not a sufficient justification for its failure properly to contest it.

The Government was given ample opportunity to respond to Leaver's statements—indeed, after the Government's initial response failed to address Leaver's Sixth Amendment claim, and failed to offer affidavits in support of the Government's factual allegations, I instructed the Government to file a supplemental brief. During the December 1, 2004 telephone conference, the Government expressly waived the right to a hearing and represented that the motion was ripe for decision on the record as it stood. The Government could have sought this subpoena, or otherwise investigated or challenged Leaver's statements, at any time after receipt of Leaver's affidavit. Indeed, had the Government sought the subpoena after that waiver, but at any time prior to my decision on December 13, I would likely have allowed the Government to retract its waiver and reopen its investigation. Instead, the Government chose to await the outcome of the motion before contesting Leaver's version of the facts.[28] The Government cannot

justify its failure to contest Leaver's statements at the proper time merely by claiming that it did not expect to lose the motion.

It is therefore necessary to decide whether justification is required. The Second Circuit has not returned to this issue since *Bayless.* I note, however, that in *United States v. Gagnon,*[29] Judge David Hurd, following *Bayless,* denied the Government's motion to reconsider a suppression ruling on the basis of new evidence, finding that the Government lacked any persuasive justification for its failure to obtain the new evidence in due diligence prior to his decision. Moreover, it has long been the law in this Circuit that, in order to reopen a suppression hearing on the basis of new evidence, the moving party, whether it is the Government or the defendant, must show that the evidence "was unknown to the party, and could not through due diligence reasonably have been discovered by the party, at the time of the original hearing."[30]

Notwithstanding the *Bayless* court's directive that "the interests of justice" should outweigh mere "vague notions" of finality and fairness,[31] it would be inappropriate here to permit the Government to use a Rule 17(c) subpoena to obtain new

other indicia of open residence put forth in Leaver's affidavits. *See* Gov't Mem. at 16–18. I addressed the Government's arguments in my December 13 Order. The Government's briefs did contest other factual issues, such as the date on which Leaver claimed he moved to France, and my decision addressed the Government's arguments on those issues.

28. It is well-established, in the context of civil litigation, that this is an improper use of a motion to reconsider. *See, e.g., Range Road Music,* 90 F.Supp.2d at 392 ("The ... limitation on motions for reconsideration is to ensure finality and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.") (quotation marks and citation omitted).

29. 250 F.Supp.2d 15 (S.D.N.Y.2003), *rev'd on other grounds,* 373 F.3d 230 (2d Cir.2004).

30. *United States v. Nezaj,* 668 F.Supp. 330 (S.D.N.Y.1987) (denying Government's motion to reopen). *See also United States v. Perez,* No. 01 Cr. 848, 2002 U.S. Dist. LEXIS 14681, at *4 (S.D.N.Y. Aug. 8, 2002) (denying defendant's motion to reopen where new witnesses were known to him and available at the time of the original hearing); *United States v. Oates,* 445 F.Supp. 351 (E.D.N.Y. 1978) (denying defendant's motion to reopen).

31. *Bayless,* 201 F.3d at 132.

evidence that it intends to offer at a "re-opened" hearing, without providing *some* justification for its failure to seek this evidence at the proper time. The Government had a lengthy and full opportunity to contest this issue, and opted not to do so, representing that the motion was ripe for decision on the record as it stood. Moreover, the Government does not (yet) seek merely to introduce some new item of evidence already within its possession (as in *Bayless* ) but seeks to use a trial subpoena to open an entirely fresh investigation of the facts. If the Court were to permit the Government to proceed in this way, without requiring a legitimate justification, then there would be no case in which the Government could not reopen hearings as a matter of course. The Government would be under no pressure to litigate any pre-trial motion diligently prior to the court's decision, with disastrous consequences for "the orderly administration of criminal justice." [32]

The Government has not offered any justification for its failure to seek this evidence at the proper time, other than that it did not expect to lose the motion.[33] Because the requested subpoena cannot produce admissible evidence, it does not meet the criteria of *Nixon*.

## IV.  CONCLUSION

For the foregoing reasons, the Government's request for a subpoena pursuant to Rule 17(c) is denied. This decision is without prejudice to the Government's right to move for reconsideration on an appropriate basis.

SO ORDERED:

---

**32.**  *Oates,* 445 F.Supp. at 353.

**33.**  *See, e.g.,* Dec. 29 Tr. at 8 ("I wish I had 20/20 hindsight ... I thought we made a very strong case.").