ELIZABETH A. WOLFORD, United States District Judge *187 INTRODUCTION
Defendant Richard Lucas ("Defendant") stands accused by way of a one-count Indictment returned on July 11, 2017, with conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Dkt. 18). Defendant was initially charged with co-defendant Dominic Daniels, but Mr. Daniels pleaded guilty on July 19, 2018. (Dkt. 91). Defendant's trial is scheduled to commence on May 14, 2019.
A suppression hearing was held in this matter on May 7, 2018, and continued on July 13, 2018. (Dkt. 68; Dkt. 94). The Court ultimately denied Defendant's motion to suppress in its entirety. (Dkt. 127; Dkt. 144).
Currently pending before the Court is Defendant's motion to reopen the suppression hearing and conduct a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), related to "the search warrant issued for a storage locker located at 1275 Sheridan Drive, Life Storage, Unit 632, Tonawanda, New York ["Unit #632"]." (Dkt. 154 at 1). For the reasons set forth below, the Court denies Defendant's request for a Franks hearing and finds that suppression of the items recovered from the search of Unit #632 is not warranted.
BACKGROUND
The background of this matter is set forth in detail in the Court's Decision and Order entered October 5, 2018 (Dkt. 127) (the "October 5th Decision and Order"), familiarity with which is assumed for purposes of this Decision and Order. The Court will summarize the relevant factual and procedural background as necessary.
A search warrant authorizing the search of Unit #632 was signed by Erie County Court Judge Kenneth F. Case on or about May 17, 2017. (Dkt. 35-2 at 9). Two days earlier (the date of Defendant's arrest), Judge Case signed a search warrant authorizing a search of Room #113 at the Comfort Inn and Suites Buffalo Airport Hotel (hereinafter referred to as "the Comfort Suites"). (Dkt. 44-1 at 5-6).
Judge Case's notes for the search warrant issued for Room #113 reference Dominic Daniels meeting with Defendant, described as a "known cocaine dealer," in Room #113 at the Comfort Suites and purchasing a large quantity of cocaine. (Def. Ex. 11 A[1] ). The notes further reference Mr. Daniels' arrest with a ½ kilogram of cocaine, Defendant's possession of the key to Room #113 at the time of his arrest, and, the Erie County Sheriff's Department ("ECSD") having confirmed with the hotel that Defendant had rented Room #113. (Id. ). The notes also reference Defendant's arrest after fleeing from law enforcement at the Comfort Suites. (Id. ).
On May 17, 2017, Detective Timothy Donovan of the ECSD swore out an affidavit in support of the warrant to search the storage locker. (Govt. Ex.[2] 28). In that affidavit, Detective Donovan stated that *188 Defendant had a rental agreement for Unit #632, and at the time of his arrest two days earlier, Defendant had in his possession two storage keys. Detective Donovan also stated that on May 17, 2017, "Apollo," an ECSD narcotics dog, positively indicated on Unit #632. A separate affidavit signed by Apollo's handler, Deputy Robert Galbraith of the ECSD, confirmed the positive indication for a narcotic odor on Unit #632 and set forth Apollo's training and certifications. (Govt. Ex. 45). In addition, Judge Case's notes generated in connection with the search warrant for the storage locker stated, in addition to the foregoing, that the keys possessed by Defendant at the time of his arrest fit into the lock on Unit #632, Defendant had a significant history of cocaine dealing, and that the prior affidavits were relevant and incorporated into the warrant application for the storage unit. (Dkt. 124).
On December 5, 2017, Defendant filed an omnibus pretrial motion seeking several forms of relief, including suppression of the storage locker evidence. (Dkt. 35-1 at 13). On October 5, 2018, the Court denied Defendant's suppression motion as to the evidence recovered from Unit #632. (Dkt. 127 at 43-45 (rejecting Defendant's arguments that storage locker evidence should be suppressed on grounds that underlying arrest and seizure was unlawful, and that dog sniff in curtilage of locker violated Defendant's Fourth Amendment rights)).
On November 6, 2018, one day before Defendant's trial was originally scheduled to begin, Defendant filed the instant motion. (Dkt. 154). Defendant argued that newly discovered evidence indicates that the day prior to the issuance of the search warrant for Unit # 632, a different narcotics dog did not alert on it, and that this newly discovered evidence requires a hearing pursuant to Franks . (Dkt. 154 at 3). Because of the then-pending trial, the Government filed its opposition to Defendant's motion the same day. (Dkt. 158). For reasons unrelated to the instant motion, Defendant's trial was subsequently adjourned to May 14, 2019. (Dkt. 161; Dkt. 168; Dkt. 189).
On May 7, 2019, the Court held an evidentiary hearing. (Dkt. 203). The Government presented testimony from Brian Krull, area manager of operations for Life Storage, Deputy Galbraith, Detective Donovan, and Detective Timothy Carney of the ECSD. (Id. ). Defendant presented testimony from Shrell Sheppard, the mother of one of his children. (Id. ). The Court heard oral argument of Defendant's motion on May 9, 2019. (Dkt. 206). Defendant also filed a letter in advance of the oral argument outlining relevant case law and some of his arguments. (Dkt. 205). At the time of oral argument, the Court reserved decision.
DISCUSSION
Defendant argues that the new information about the dog sniff (namely, that a day prior to the search warrant for Unit #632 being issued a different dog did not alert on it) requires the Court to hold a Franks hearing and ultimately to suppress the evidence recovered from Unit #632. The Court disagrees, for the reasons discussed below.
I. Legal Standard
"[I]t is within a district court's discretion to reopen a suppression hearing." United States v. Tisdol, 450 F.Supp.2d 191, 194 (D. Conn. 2006) ; see also United States v. Bayless , 201 F.3d 116, 131 (2d Cir. 2000) ("We conclude that the abuse of discretion standard accurately reflects the degree of deference properly accorded a district court's decisions regarding evidentiary matters and the general conduct of trials[.]"). "[I]t has long been the law in this Circuit that, in order *189 to reopen a suppression hearing on the basis of new evidence, the moving party ... must show that the evidence was unknown to the party, and could not through due diligence reasonably have been discovered by the party, at the time of the original hearing." United States v. Leaver, 358 F.Supp.2d 273, 279 & n.30 (S.D.N.Y. 2005). "[T]he standard for reopening a suppression hearing based on new evidence is as stringent as the standard for reconsideration." United States v. Almonte, No. 14 CR. 86 KPF, 2014 WL 3702598, at *3 (S.D.N.Y. July 24, 2014) ; see also United States v. Oliver, 626 F.2d 254, 260 (2d Cir. 1980) (upholding refusal to reopen a suppression hearing because, among other things, defendant failed to offer "new evidence of material significance"). When the proffered new evidence "do[es] not bear on the core findings of the suppression hearing," a court does not abuse its discretion in declining to reopen the hearing. United States v. Oquendo, 192 F. App'x 77, 81 (2d Cir. 2006) ; see also United States v. Pena Ontiveros, No. 07 Cr. 804(RJS), 2008 WL 2446824, at *4 (S.D.N.Y. June 16, 2008) (holding that "reopening the suppression hearing would be futile" because the new evidence "would not change the Court's previous decision").
With respect to Defendant's request for a Franks hearing, "[a] defendant is permitted to challenge the veracity of a search warrant in limited circumstances. One such circumstance is where the affidavit in support of the search warrant is alleged to contain deliberately or recklessly false or misleading information." United States v. Canfield, 212 F.3d 713, 717 (2d Cir. 2000) (citing Franks, 438 U.S. at 164-72, 98 S.Ct. 2674 ). Under Franks, to justify a full hearing regarding a search warrant's validity, a defendant must make "a substantial preliminary showing that (1) the affidavit contained false statements made knowingly or intentionally, or with reckless disregard for the truth; and (2) the challenged statements or omissions were necessary to the Magistrate's probable cause finding." United States v. Levasseur, 816 F.2d 37, 43 (2d Cir. 1987) (quotation omitted). "In considering whether an affidavit contains misrepresentations or omissions, the reviewing court should also supplement the affidavit with any facts that were not in the affidavit but that were proven at the suppression hearing." United States v. Liburd, No. 17-CR-296 (PKC), 2018 WL 2709199, at *3 (E.D.N.Y. June 5, 2018) (quotation omitted). Moreover, even where a search-warrant affidavit contains false or misleading information, "a Franks hearing is required only if, 'with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause.' " United States v. Wapnick, 60 F.3d 948, 956 (2d Cir. 1995) (quoting Franks, 438 U.S. at 156, 98 S.Ct. 2674 ).
II. Standing to Challenge Search Warrant
As a threshold matter, the Government argues that Defendant lacks standing to challenge the search warrant because he did not have a cognizable privacy interest in Unit #632. In support of this argument, the Government presented evidence that Defendant entered into a rental agreement for Unit #632 on July 15, 2016. (Govt. Ex. 26). The rental agreement was month-to-month and required Defendant to pay $ 236.00 by the first day of each calendar month. (Id. ). The rental agreement further provided that the owner of the storage unit shall have a lien on all personal property stored at the facility and that in the event of a failure to pay rent, the owner would take "any or all of the following actions": (1) terminate or not renew the rental agreement; (2) after five days of default, overlock the storage unit and deny the customer the right of access; (3) after the fifth day of the month, assess a $ 15.00 *190 late charge; (4) after the twentieth day of the month, assess a $ 25.00 late charge; (5) after 30 days of default, enforce the lien, including by cutting the customer's lock and removing and selling the personal property. (Id. ).
Mr. Krull, the area manager of operations for Life Storage, testified that if a customer failed to timely make payment on the first of the month, a late fee of $ 15.00 would be assessed, an overlock would be placed on the storage unit, and the electronic access code allowing the customer to enter the facility would be deactivated.[3] He further testified, and Life Storage's records confirmed, that Defendant did not timely pay his rent on May 1, 2017, and that the rent remained past due on May 17, 2017, when the search of Unit #632 was conducted.
The Government contends that, on these facts, Defendant did not have a reasonable expectation of privacy in Unit #632. The Court disagrees, for the reasons set forth below.
An individual challenging a search under the Fourth Amendment "must demonstrate a subjective expectation of privacy in the place searched, and that expectation must be objectively reasonable." United States v. Lyle, 919 F.3d 716, 727 (2d Cir. 2019).[4] "One need not be the owner of the property for his privacy interest to be one that the Fourth Amendment protects, so long as he has the right to exclude others from dealing with the property." United States v. Santillan, 902 F.3d 49, 62 (2d Cir. 2018), cert. denied, --- U.S. ----, 139 S.Ct. 1467, 203 L.Ed.2d 697 (2019).
"A protected privacy interest has been found in a wide array of circumstances," including in "a rental storage unit." United States v. Hamilton, 538 F.3d 162, 167-68 (2d Cir. 2008). As the Government points out, federal courts have found that a protected privacy interest may terminate when the renter of a storage unit fails to pay rent in accordance with the agreement. See, e.g., United States v. Reyes, 908 F.2d 281, 286 (8th Cir. 1990) ; United States v. Melucci, 888 F.2d 200, 201-202 (1st Cir. 1989) ; United States v. Ibrahim, No. 13-207 (2) (SRN/TNL), 2014 WL 5860388, at * 10-11 (D. Minn. Nov. 12, 2014) ; United States v. Abiodun, No. 04 CR 1315(DC), 2005 WL 3117305, at *2 (S.D.N.Y. Nov. 22, 2005) ; United States v. Salameh, 1993 WL 364486, at *6 (S.D.N.Y. Sept. 15, 1993).
However, the facts of this case are distinguishable from the facts in the cases cited by the Government. For example, in Abiodun , the defendant had used a false name and false identification to rent the storage unit and had "failed to pay rent on a month-to-month tenancy for three or four months," an overlook had been placed on the storage unit, and the contents had been scheduled for an auction. 2005 WL 3117305 at *3. Similarly, in Ibrahim , "[l]aw enforcement examined the locker's contents months after Defendant's rental lapsed for non-payment." 2014 WL 5860388 at *11 ; see also Melucci, 888 F.2d at 201-201 (finding the defendant had no standing to challenge search of storage *191 unit where he had rented it under a false name and address, the rent was in arrears by multiple months, and the owner had retaken possession in accordance with the lease); Salameh, 1993 WL 364486 (finding no reasonable expectation of privacy in storage locker where it was rented under a false name, was used to store ultrahazardous materials in breach of the storage agreement, and the defendant was in default on the rent). Reyes is arguably the case closest to the instant matter in facts. However, in Reyes , the defendant had rented the locker at issue for only 24 hours and the rental company had plugged the lock and had the right to remove his items at any time. 908 F.2d at 286.
The Government also relies on the Second Circuit's decision in United States v. Rahme, 813 F.2d 31 (2d Cir. 1987), which considered a defendant's privacy interest in a hotel room once the rental period had expired. As an initial matter, the Court is not convinced that a hotel room, which by nature is intended for short term use, is analogous to a storage unit that a defendant has occupied for many months. In any event, in Rahme , the hotel owner had entered the room and removed the defendant's luggage, which was key to the Second Circuit's decision. Id. at 35 ("Once the hotel, in a position adverse to the guest, properly takes possession of the luggage, the guest no longer has the right to control access to it and can have no legitimate expectation of privacy in it."); see also United States v. Henderson, 241 F.3d 638, 647 (9th Cir. 2000) (collecting cases "which suggest that one loses a legitimate expectation of privacy in rented property after the rental contract has expired" and explaining that the key factor in such decisions is "acts of dominion [by the owner of the property that] terminated the defendants' control over the property," and finding that the defendant had a legitimate expectation of privacy in a rental car notwithstanding the expiration of the rental agreement because the rental company "had not attempted to repossess the car, despite its contractual right to do so").
By contrast, at the time the search warrant was executed, Defendant was only approximately two weeks late on the monthly rent for Unit #632. Life Storage's records establish that Defendant had, on other occasions, fallen comparably behind in his rent and subsequently caught up on his payments without interference with his property. Indeed, the proof at the evidentiary hearing established that Defendant did just that after execution of the search warrant. (See Govt. Ex. 26 (reflecting that $ 537.00 was paid on June 14, 2017, bringing Defendant's balance to zero)). Mr. Krull also confirmed during his testimony that, as of May 17, 2017, Life Storage did not have the right to enforce its lien on Defendant's personal property by entering Unit #632. As such, while Life Storage had prevented Defendant from accessing his property as of May 17, 2017, it had not taken affirmative steps to repossess Unit #632, nor could it have lawfully seized and sold Defendant's property at that time.
On this record, the Court finds that Defendant had a reasonable expectation of privacy in Unit #632. The Court's inquiry is whether Defendant "ha[d] the right to exclude others from dealing with the property," Santillan, 902 F.3d at 62, and the evidence demonstrates that Defendant did indeed have this right on May 17, 2017, even if he did not have access to the property himself. Moreover, based on Defendant's prior dealings with Life Storage and the express terms of his rental agreement, he had no reason to believe that falling two weeks behind in rent would have repercussions regarding his continued possession of the personal property he had stored in Unit #632. The Court thus rejects the Government's threshold contention that Defendant lacks standing to challenge the search warrant.
*192 III. Consideration of Judge Case's Notes
Before turning to the merits of Defendant's request for a Franks hearing, the Court considers a second threshold issue that was not raised in the parties' submissions, but that was alluded to by defense counsel at the court appearance held on May 1, 2019. At that appearance, defense counsel implied that it was improper for the Court, in assessing the validity of the search warrant, to take into account the information set forth in Judge Case's notes. Although Defendant failed to make this argument in his moving papers, and although Defendant was the party who initially sought to have Judge Case's notes produced and has cited them in support of his arguments, the Court has nonetheless conducted its own research and concludes that Judge Case's notes are relevant and may be considered in the Court's analysis.
Detective Donovan appeared before Judge Case and provided sworn testimony in support of the application for a warrant to search Unit #632. Judge Case took notes setting forth the key elements of this testimony, which the Court has reviewed and which have been made part of the record in this case. (Dkt. 124).
As a general proposition, "[a]ll data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." United States v. Falso, 544 F.3d 110, 122 (2d Cir. 2008) (quoting United States v. Gourde, 440 F.3d 1065 (9th Cir. 2006) ). However, "[t]he Fourth Amendment permits the warrant-issuing magistrate to consider sworn oral testimony supplementing a duly executed affidavit to determine whether there is probable cause upon which to issue a search warrant. Thus, where-as here-the court considered oral testimony in support of the warrant, the determination of probable cause is not necessarily restricted to the four corners of the affidavit." United States v. Morris, No. 09-CR-38(S)(M), 2011 WL 13127949, at *3 (W.D.N.Y. Mar. 16, 2011), aff'd, United States v. Morris, 509 F. App'x 58 (2d Cir. 2013). In such cases, the Court may consider the issuing judge's notes in ascertaining the content of the testimony. See id.
The Court notes that New York Criminal Procedure Law § 690.40(1) provides that "[i]n determining an application for a search warrant the court may examine, under oath, any person whom it believes may possess pertinent information. Any such examination must be either recorded or summarized on the record by the court." The New York Court of Appeals has held that "substantial-rather than literal-compliance may satisfy" this requirement, but has also concluded that a judge's "few notes taken for his own edification cannot be equated with an effort, let alone a conscientious effort, to create a contemporaneous record of the testimony... as required by statute." People v. Taylor, 73 N.Y.2d 683, 689, 543 N.Y.S.2d 357, 541 N.E.2d 386 (1989). However, at least one appellate court in New York has found that a judge's notes that "summarize[ ] the essential points of the testimony ... are adequate to substantially comply with the requirements of CPL 690.40(1)[.]" People v. Mendoza, 5 A.D.3d 810, 812, 773 N.Y.S.2d 152 (3d Dep't 2004). In this case, Judge Case's notes are more akin to the notes approved of in Mendoza than those disapproved of in Taylor , and therefore arguably constitute substantial compliance with New York's recording requirement.
In any event, regardless of whether Judge Case complied with New York's statutory recording requirement, "the Fourth Amendment does not incorporate state procedural criminal law."
*193 United States v. Bernacet, 724 F.3d 269, 277 (2d Cir. 2013) ; see also United States v. Jones, No. 10-CR-168, 2013 WL 4541042, at *5 (W.D.N.Y. Aug. 27, 2013) ("Where evidence secured from a state search warrant is employed in a federal prosecution, ... review of the warrant is concerned solely with the requirements of the Fourth Amendment."). "The Fourth Amendment does not require that statements made under oath in support of probable cause be tape-recorded or otherwise placed on the record or made part of the affidavit." Morris, 2011 WL 13127949 at *3 (quoting United States v. Shields, 978 F.2d 943, 946 (6th Cir. 1992) ). As such, Judge Case's notes may be considered in the Court's assessment of whether probable cause supported issuance of the warrant.
IV. Imputation of Knowledge of Negative Dog Sniff to Detective Donovan
The Court next considers the merits of Defendant's request for a Franks hearing. In assessing whether a Franks hearing is necessary, the first question the Court must consider is whether Defendant has made a substantial preliminary showing that the affidavit submitted in connection with the search warrant contained false statements made knowingly or with reckless disregard for the truth. In this regard, "[a]llegations of negligence or innocent mistake are insufficient." Franks, 438 U.S. at 171, 98 S.Ct. 2674. Instead, the Court's "focus is not on whether a mistake was made, but rather on the intention behind the mistake." United States v. Markey, 131 F.Supp.2d 316, 324 (D. Conn. 2001), aff'd sub nom. United States v. Simpson , 69 F. App'x 492 (2d Cir. 2003). "While Franks addresses false statements, 'omissions from an affidavit that are claimed to be material are governed by the same rules.' " United States v. Dolaway, No. 12-CV-6097-FPG, 2014 WL 2040041, at *2 (W.D.N.Y. May 15, 2014) (quoting United States v. Ferguson, 758 F.2d 843, 848 (2d Cir. 1985) ).
Here, the allegedly material omission in the search warrant affidavit is the fact that on May 16, 2017, a narcotics dog used by the Town of Tonawanda Police Department did not alert to Unit #632. However, the record before the Court establishes, without contradiction, that Detective Donovan, who completed the search warrant affidavit, was not aware of the negative dog sniff. Detective Donovan credibly testified at the hearing on May 7, 2019, that he was unaware of the negative dog sniff. It is well-established that to warrant a hearing under Franks , the defendant must adduce evidence that "the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth." United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998). Here, Detective Donovan's failure to include the negative dog sniff in the search warrant affidavit indisputably was not deliberate because he was not aware that it had even occurred.
Defendant has argued that Detective Donovan exhibited reckless disregard for the truth because Defendant was being investigated by a joint task force involving officers from local, state, and federal agencies, including the Town of Tonawanda Police Department, and as such Detective Donovan should have been aware of the negative dog sniff. The Government has conceded that information about the negative dog sniff should be imputed to Detective Donovan pursuant to the collective knowledge doctrine,[5] but argues that neither *194 Detective Donovan nor any other member of the joint task force acted recklessly or deliberately in failing to present that information to Judge Case.
Other federal courts have rejected arguments similar to Defendant's. For example, in United States v. Owens, No. 2:15-CR-55-NT, 2015 WL 6445320 (D. Me. Oct. 23, 2015), aff'd, 917 F.3d 26 (1st Cir. 2019), the defendant sought a Franks hearing because the search warrant affidavits "omitted material information that, although not known to them individually, should be imputed to them under the collective knowledge doctrine." Id. at *11. The Owens court rejected this argument, explaining that pursuant to Franks , an omission is constitutionally problematic "only if it is designed to mislead, or ... made in reckless disregard of whether it would mislead, the magistrate in his appraisal of the affidavit." Id. at *17 (quotation and alterations omitted). The Owens court accordingly found that, in the context of Franks , the collective knowledge doctrine is "limited to the deliberate or reckless material misrepresentations or omissions by non-affiants," and that "the omission of a particular detail, without more, is not enough to satisfy the mens rea element of the Franks test." Id. (quotation omitted); see also United States v. Miller, No. 6:11-CR-00004, 2012 WL 1414853, at *4 (W.D. Va. Apr. 24, 2012), aff'd, 534 F. App'x 204 (4th Cir. 2013) (considering the interaction of Franks and the collective knowledge doctrine and finding that "if any officer deliberately misrepresented or withheld material information from [the affiant], that act or omission can serve as a basis for exclusion").
The Court agrees with the Owens and Miller courts and finds that in applying the collective knowledge doctrine in the context of Franks , special care must be given not to extend Franks to omissions that cannot reasonably be found to have been either deliberate or reckless. As such, while law enforcement cannot "shield itself from Franks suppression hearings by deliberately insulating affiants from information material to the determination of probable cause," Wapnick, 60 F.3d at 956, the mere failure of a member of a joint task force to convey information to an affiant, without any evidence that that the failure was undertaken with the intent to deceive, is insufficient to warrant a hearing under Franks , see Owens, 2015 WL 6445320, at *11 (explaining that criminal investigations "unfold on multiple levels at a rapid pace" and that there must be some showing of intentionality by the non-affiant to warrant a Franks hearing).
In this case, there is no evidence that the Tonawanda Police deliberately or recklessly failed to inform Detective Donovan about the negative dog sniff, nor is there any evidence that Detective Donovan deliberately or recklessly failed to inform Judge Case about the negative dog sniff. Under these circumstances, the mens rea requirement of Franks cannot be satisfied, notwithstanding the application of the collective knowledge doctrine. See United States v. Rajaratnam, 719 F.3d 139, 154 (2d Cir. 2013) (an inference of reckless *195 disregard for the truth cannot be "automatically drawn simply because a reasonable person would have included the omitted information"); see also Franks, 438 U.S. at 171, 98 S.Ct. 2674 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."). Defendant therefore has not made a substantial preliminary showing that Detective Donovan's affidavit contained either false statements or material omissions made knowingly or with reckless disregard for the truth.
V. Existence of Probable Cause Absent Challenged Information
Defendant has also failed to make a substantial preliminary showing that the omitted information about the negative dog sniff was necessary to Judge Case's determination that probable cause for the search warrant existed. Initially, the Court considers Defendant's argument that the proper procedure under Franks is for the Court to omit consideration of the positive dog sniff on May 17, 2017, rather than adding in the information about the negative dog sniff on May 16, 2017. This argument is foreclosed by the Second Circuit's decision in Rajaratnam , where the court explained that with respect to omissions, "the literal Franks approach does not seem adequate because, by their nature, omissions cannot be deleted," and that accordingly, the appropriate approach is "to insert the omitted truths revealed at the suppression hearing." 719 F.3d at 146 (alterations and quotations omitted).
At oral argument, defense counsel relied on United States v. Ferguson, 758 F.2d 843, 848 (2d Cir. 1985) to contend that the Court should not insert into the affidavit the alleged omissions in assessing the second Franks prong. However, in Ferguson , the Second Circuit found that "the affidavits omitted no material facts." Id. at 848. Moreover, Rajaratnam was decided well after Ferguson and, as set forth above, expressly held that insertion of the omitted information is the appropriate procedure.
As such, the Court considers whether, had Judge Case been informed of the negative dog sniff on May 16, 2017, the affidavit would have still established probable cause, and finds in the affirmative. At the evidentiary hearing held in connection with Defendant's motion, Deputy Galbraith credibly testified at length regarding the qualifications of Apollo. Records establishing Apollo's reliability were also submitted to the Court. This evidence established that Apollo had undergone 480 hours of narcotics detection training before being assigned to Deputy Galbraith, that Deputy Galbraith and Apollo underwent six weeks of initial training together and then passed a certification test by the North American Police Working Dog Association (Govt. Ex. 44), that Deputy Galbraith and Apollo had successfully completed the New York State Division of Criminal Justice Services Narcotic Detection K9 Team Certification Test following a week of hands-on training and that the certification was current (Govt. Ex. 35), that Deputy Galbraith and Apollo do a minimum of eight hours of narcotics detection each month, and that Deputy Galbraith had been using Apollo in the field since 2016.
The Supreme Court set forth the standard for assessing the presence of probable cause to conduct a search in Florida v. Harris, 568 U.S. 237, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013) :
A police officer has probable cause to conduct a search when the facts available to [him] would warrant a [person] of reasonable caution in the belief that contraband or evidence of a crime is *196 present. The test for probable cause is not reducible to precise definition or quantification. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the [probable-cause] decision. All we have required is the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act.
Id. at 243-44 (alterations in original) (internal quotation marks and citations omitted). The Supreme Court described the test as employing a "practical and common-sensical standard" based upon "the totality of the circumstances." Id. at 244, 133 S.Ct. 1050 ("Probable cause, we emphasized, is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." (internal quotation marks omitted)).
With respect to the use of drug-detecting dogs, the Harris Court explained:
If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs. After all, law enforcement units have their own strong incentive to use effective training and certification programs, because only accurate drug-detection dogs enable officers to locate contraband without incurring unnecessary risks or wasting limited time and resources.
Id. at 249. In this case, there is no question that Apollo was adequately and appropriately trained. Moreover, Deputy Galbraith credibly testified that nothing about the conditions on May 17, 2017, caused him to have any concerns about the reliability of Apollo's alert on Unit #632. The Court thus easily concludes that, as with the dog in Harris , Apollo's "sniff" was "up to snuff." Id. at 248, 133 S.Ct. 1050. Apollo's positive alert was accordingly sufficient to support a finding of probable cause.
The other evidence in front of Judge Case, considered in connection with Apollo's positive alert, amply supported the existence of probable cause. As the Court explained in the October 5th Decision and Order, Judge Case was aware at the time he issued the search warrant that Defendant had a rental agreement for Unit #632, that he possessed the keys to Unit #632 at the time of his arrest, that he had a known history of drug-trafficking, and that he had fled from law enforcement at the Comfort Suites where Mr. Daniels had been observed before he was subsequently apprehended with a large quantity of cocaine. (See Dkt. 127 at 45).
The Court further finds that, in light of this evidence, probable cause would have existed even had Judge Case been aware of the negative dog sniff on May 16, 2017. United States v. Lakoskey, 462 F.3d 965 (8th Cir. 2006) is instructive. In that case, there had been two negative dog sniffs on a package prior to the positive alert-the first by a dog "from a local police department," and the second by the dog that ultimately gave the positive alert. Id. at 970. The search warrant application disclosed the second negative sniff, but not the first. Id. at 977-78. The Eighth Circuit upheld the district court's denial of the defendant's request for a Franks hearing, explaining that the defendant had not shown "that if the search-warrant affidavit contained the allegedly omitted information, it would not have been sufficient to support a finding of probable cause." Id. at 978. In particular, the Eighth Circuit *197 found that the two negative dog sniffs did not change the fact that the "positive dog sniff was enough to establish probable cause for a search warrant." Id. at 977 ; cf. United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997) ("[B]ecause we conclude that none of the "omitted" information [about an alert dog's accuracy] would have altered the magistrate judge's decision in this case, we disagree with the district court's ruling invalidating the search warrant.").
Like the Lakoskey court, this Court does not find that the existence of an earlier, negative alert by a different dog dissipates the probable cause that results from an alert by an appropriately trained, reliable dog. Moreover, and as the Court has noted, there was additional information before Judge Case to support his ultimate probable cause determination. Under these circumstances, the Court finds that even had Detective Donovan included information about the earlier negative dog sniff in his affidavit, it would not have altered the probable cause determination. Accordingly, a Franks hearing is not warranted.
VI. Good Faith
Finally, even assuming arguendo that the search warrant in this case was lacking in some manner, the Court finds that suppression of the evidence recovered from Unit #632 would not be warranted because the Government has established that law enforcement acted in good faith.
In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that suppression of evidence is not warranted where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," notwithstanding the fact that a court later determines that the search warrant was invalid. Id. at 920, 104 S.Ct. 3405 ; see also United States v. Ganias, 824 F.3d 199, 221 (2d Cir. 2016) ("In Leon , the Supreme Court determined that the exclusion of evidence is inappropriate when the government acts in objectively reasonable reliance on a search warrant, even when the warrant is subsequently invalidated." (quotation omitted)).
The Second Circuit has identified four circumstances where the Leon good faith exception does not apply:
(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.
United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011) (quoting United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992) ). None of these circumstances apply here. The Court has already discussed at length the basis for its conclusion that law enforcement did not knowingly mislead Judge Case. Even assuming that the collective knowledge doctrine requires the Court to impute knowledge of the negative dog sniff to Detective Donovan, the Court has found no evidence of an intent to mislead or conceal evidence.
There is also no evidence that Judge Case abandoned his judicial role in this case. In fact, even if Judge Case's failure to take a verbatim record of Detective Donovan's testimony called into question his compliance with state law, the Second Circuit has found this insufficient to "manifest an abandonment of [the magistrate's] judicial role so as to preclude reliance on Leon ." Morris, 509 F. App'x at 61.
The Court further finds that the search warrant application was not so lacking in indicia of probable cause as to render reliance *198 upon it unreasonable. To the contrary, as discussed above, the Court concludes that the search warrant application established that probable cause existed.
Finally, Defendant has not argued that the search warrant in this case was so facially deficient that reliance upon it was unreasonable, nor would the record support such a finding. The search warrant in question described with particularity the places and things to be searched and was not deficient on its face.
For all these reasons, the Court concludes that law enforcement in this case was acting in good faith and suppression is not an appropriate remedy for any defects in the search warrant.
CONCLUSION
For the foregoing reasons, Defendant's request for a Franks hearing (Dkt. 154) is denied, and the evidence recovered from Unit #632 will not be suppressed.
SO ORDERED.

Judge Case's handwritten notes pertaining to the search warrant issued on May 15, 2017, were introduced into evidence by Defendant at the suppression hearing on July 13, 2018, as Exhibit 11A. (T at 285). The Court discusses the legal basis for its consideration of these notes later in this Decision and Order.

"Govt. Ex." references the corresponding exhibit introduced by the Government at the evidentiary hearing held on May 7, 2019.

A transcript of the evidentiary hearing conducted on May 7, 2019, has not yet been prepared. The Court has relied on its notes and recollection of the testimony in preparing this Decision and Order. In the event of any discrepancy between the Court's recollection and the transcript once it is prepared, the transcript will govern.

Defendant has stated in a sworn declaration that he had a subjective expectation of privacy in Unit #632 (see Dkt. 35-3 at ¶5), and that statement has not been controverted. Accordingly, the record demonstrates that Defendant had a subjective expectation of privacy in the place searched.

The Court notes that there is case law to the contrary. For example, in United States v. Duval, 742 F.3d 246 (6th Cir. 2014), the Sixth Circuit rejected the application of the collective knowledge doctrine under similar circumstances. Id. at 253-54 ; see also United States v. Cannon, No. 17-20523, 2017 WL 6059326, at *5-6 (E.D. Mich. Dec. 7, 2017) (finding that the collective knowledge doctrine did not apply because there was no evidence "that other officers communicated with [the affiant], directly or indirectly, about the allegedly omitted information"); United States v. Johnson, No. 5:16-CR-44-DCR-REW, 2016 WL 3693327, at *8 n.17 (E.D. Ky., June 30, 2016) (explaining that in Duval , the Sixth Circuit rejected "an effort to apply the [collective knowledge] doctrine as a sword for the defense in attacking a warrant under Franks "). However, in light of the Government's concession, the Court will assume that the collective knowledge doctrine applies in this context.